Exhibit 1

Affidavit of Service by Certified Mail

Form Supplied by D.C. Superior Court

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### FAMILY COURT
### Domestic Relations Branch

_____

PRINT PLAINTIFF'S NAME                                          _____ DRB _____

                                    PLAINTIFF,                  JUDGE: _____

v.

_____

PRINT DEFENDANT'S NAME

                                    DEFENDANT.

### AFFIDAVIT OF SERVICE BY
### CERTIFIED MAIL

I, _____, am the ☐ PLAINTIFF
                  PRINT YOUR NAME                    ☐ DEFENDANT
                                                    ☐ OTHER _____
                                                        RELATIONSHIP TO CASE

**1. I certify that I served copies of the following paper(s) in this case:**

☐ The summons                    ☐ The following orders: _____
☐ A copy of the complaint        ☐ Other: _____
☐ A Notice of Motion             ☐ Other: _____

**to the other party at** _____, **their:** ☐ TEMPORARY RESIDENCE.
                                    ADDRESS                            ☐ PERMANENT RESIDENCE.
                                                                       ☐ OTHER: _____.
                                                                           SPECIFY TYPE OF RESIDENCE

**2. I received the return receipt ("green card") from the U.S. Postal Service.**

**3. I reviewed the return receipt ("green card"), it was signed on _____ and I believe that (CHECK ONE):**

☐ it was signed by the other party: _____
                                        NAME OF THE OTHER PARTY

☐ it was signed by a person of suitable age and discretion who lives at the home of the other party. I state the following about the person who signed the return receipt:

Their name is: _____.

Their approximate age is: _____.

Their relationship to the other party is:

☐ Spouse/partner     ☐ Family member (specify): _____

☐ Roommate           ☐ Other: _____

The reason why I believe this person lives at the above address is:

_____
_____
_____

I believe this person is of suitable age and discretion and will give the papers to the other party because:

_____
_____
_____

---

I declare under penalty of perjury that the foregoing is true and correct.

*If this document is to be signed outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States, additional requirements must be met prior to signing.  See SCR-Dom. Rel. 2(c)(1)(B).*

_____          _____
SIGN YOUR NAME                            DATE

_____          _____
PRINT YOUR NAME                           PHONE NUMBER

_____          _____
HOME ADDRESS 1                            EMAIL ADDRESS

_____
HOME ADDRESS 2

☐ SUBSTITUTE ADDRESS: CHECK THIS BOX
IF YOU HAVE WRITTEN SOMEONE ELSE'S
ADDRESS BECAUSE YOU FEAR HARASSMENT
OR HARM.

ATTACH THE RETURN RECEIPT ("GREEN CARD") HERE

Affidavit of Service by Certified Mail – Page 3 of 3

Exhibit 2

Affidavit by Process Server

## INVESTIGATIVE DUE DILIGENCE AFFIDAVIT

### In the Superior Court for the District of Columbia
### Civil Division

**Michael R. Newman**

        Plaintiff(s),

VS.

**Howard University School of Law, et al.**

        Defendant(s).

Attorney: NONE

Michael Ray Newman
1935B Lamont Street NW
Washington DC 20010

*292301*

**Case Number: 2023-CAB-000246**

Legal documents received by Same Day Process Service, Inc. was requested to provide an affidavit of due diligence for subject(s), **Lawan Lanier-Smith on 02/23/2023 at 12:10 PM at Crowell & Moring, LLP, 1001 Pennsylvania Ave., N.W., Washington, DC 20004**

The undersigned, swear and affirm that on **February 24, 2023 at 1:29 PM**, I did the following:

**NON-SERVED:** After careful inquiry and diligent attempts, I was unable to serve **Lawan Lanier-Smith** the **Summons; Complaint for Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, Defamation, Tortious Interference with Contract, and Violation of D.C. H.R.A., and Title VI of Civil Rights Act of 1964; Initial Order; Remote Hearing Instructions** for the reason(s) indicated in the comments below:

| Date/Time | Address | Remarks |
|---|---|---|
| 02/24/2023-1:29 PM | Crowell & Moring, LLP, 1001 Pennsylvania Ave., N.W. Washington, DC 20004 | Upon my arrival, I spoke to security and asked for the subject, attorney Amanda Shafer Berman. I was told that, without an appointment, I could not be let up to the office. I called the subject's personal number and left a detailed message. I also called Crowell & Morning, but they connected me back to her line. - Attempted by Lanna Washington |

**Lanna Washington**
Process Server

Internal Job ID:292301

**Same Day Process Service, Inc.**
**1413 K St., NW, 7th Floor**
**Washington DC 20005**
**(202)-398-4200**
**info@samedayprocess.com**

# Exhibit 3

# Communications with Defendants' Counsel
# February 16, 2023, to March 15, 2023

1                         <u>2023.02.16, 4:05 PM</u> *Email*

2    Mr. Newman –

3    My colleague Laurel Malson and I will be representing Howard University and the other named

4    Defendants in your recently filed case. Because the case presents several federal law questions,

5    we have removed the case to the United States District Court for the District of Columbia; see

6    the attached removal notice and civil case cover sheet. These will be sent to you via Fedex as

7    well.

8    We also want to let you know that we do not believe that service has been properly effected. As a

9    party to the suit, you may not serve the summons and complaint yourself, even via certified mail.

10   Service on the individual defendants was also improper because Howard University is not a

11   registered agent for those individuals. However, our clients are willing **to waive service** using

12   the procedure set forth in Federal Rule of Civil Procedure 4(d). Under that rule, you could fill out

13   and email me the court's **waiver form**, which I would execute on behalf of Defendants and

14   return for you to file with the court (and we will agree that you do not need to send additional

15   copies of the complaint and summons with the **waiver form**, or a prepaid way of returning it).

16   Defendants then would have 60 days from when you sent the **waiver request** to file a responsive

17   pleading (i.e., answer or motion to dismiss the complaint). Please let me know if you'd like to

18    agree to use this **waiver procedure** to effect service. We think it would be the easiest way to

19    move forward for all involved, but it is of course your choice.

20    If you need more than a few days to consider, we will likely file a motion with the Court early

21    next week requesting an extension of time to file a response to the Complaint so that we can

22    hopefully resolve the service issues, or alternatively file a responsive pleading such as a motion

23    to dismiss for improper service or other reasons.

24    I look forward to your response. Best,

25    Amanda Shafer Berman

---

26    <u>*2023.02.21 Voice Mail*</u>

27    Hi, Mr. Newman. This is Amanda Berman at Crowell Moring. I'm representing Howard

28    University in the suit you filed against them.

29    I'm calling to follow up on my email to you from last Thursday, which I hope you received. You

30    should have also received service of the documents removing the case to federal court.

31    Immediate issues that we need to address are service of process. As noted in my email, Howard

32    believes that service has been improper so far. We're willing to take steps to do the **waiver**

33    **process** and address those issues, but I need to know if that's how you want to proceed.

34    Also, and probably in any event at this point, we plan to file a motion with the court explaining

35    the status of things and extending any deadline to respond to the complaint for at least 30 days

36    while we **sort out any service issues** and thereby **try to avoid having to file a motion to**

37    **dismiss on that particular basis** in addition to any other component of our responsive pleading.

38    So, I would like to know your position on that motion.

39   You can respond to my email, or you can give me a call back at (202) 688-3451. Thanks a lot.

40                        <u>2023.02.22, 9:28 AM</u> *Email*

41   Mr. Newman –

42   I'm following up on my voicemail yesterday and the email below to again let you know that

43   Defendants Howard University et al. intend to move for a 30-day extension of time to file a

44   responsive pleading (from February 23 to March 27, the Monday after the 30th day), including

45   because that **hopefully will give the parties time to address the service issues** identified below.

46   Please let me know your position on this motion.

47   Also, I'm attaching Judge McFadden's local rules for your reference. Best,

48   Amanda Shafer Berman

49   ***On February 22, 2023: Defendants' counsel filed their first Motion to Extend Time.***

50                        <u>2023.02.23, 9:12 AM</u> *Email*

51   Mr. Newman –

52   Attached is the extension motion we filed on behalf of Howard University yesterday, pursuant to

53   my prior emails and voicemail, and below is the court's order granting that motion. Please

54   confirm receipt of this email conveying these courtesy copies so I know that this email address

55   works (I believe it is the one on your complaint, but am concerned there is some error).

56   Also, Defendants continue to be willing to accept service via the **Rule 4(d) waiver process** I

57   outlined in my first email to you. Please let me know if you want to go that route.

58   Amanda Shafer Berman

59    *On February 23, 2023, I paid $300 to a process server company.*

60    *On February 24, 2023, at 1:29 PM, a process server attempted to serve Defendants at Amanda*

61    *Berman's office at Crowell & Moring, LLP, 1001 Pennsylvania Ave., N.W. Remarks:* "Upon my

62    arrival, I spoke to security and asked for the subject, attorney Amanda Shafer Berman. I was told

63    that, without an appointment, I could not be let up to the office. I called the subject's personal

64    number and left a detailed message. I also called Crowell & Morning [sic], but they connected

65    me back to her line. – Attempted by Lanna Washington." Ex. 2.

66    <u>2023.02.24 *Phone Conversation*</u>

67    M. Newman: Hello?

68    A. Berman: Hi. Is this Mr. Newman?

69    M. Newman: Yes.

70    A. Berman: Hi, this is Amanda Berman from Crowell and Moring returning your call.

71    M. Newman: Hello. Thank you. Well, actually I was returning your call. But you emailed me and

72    you called me and you said that you didn't think service was proper?

73    A. Berman: Yeah, no, **we don't think service was proper**. I think you were trying to effect it

74    today by having someone serve me, which is also not proper. **My client is very willing to have**

75    **me execute a waiver** under the Rule 4 process. I think I sent you information in the email about

76    where you can find that court form, and if you just want to fill that out and email it to me, we can

77    do it that way. But, no, we don't think you have properly effected service under the rules.

78    M. Newman: So is it because—so, I think I read the federal rules to say that I should serve the

79    attorney.

80   A. Berman: No, that's not right. I'm not a registered agent, but **I can execute a waiver** for my

81   clients.

82   M. Newman: **You can't accept service for your client?**

83   A. Berman: **Nope, I can't. [*Laughs*.]** But **I can execute a waiver of service** under the waiver

84   process, **which is what is used in most cases at this point**.

85   M. Newman: In most cases, waiver is chosen over actual service?

86   A. Berman: Yes, because it's a lot easier. **As I think you are finding out, service is very, very**

87   **picky. There are certain ways only that you can serve**, and it has to be a registered agent for

88   the person. As we conveyed before, you can't do the serving. You do have to have a third party

89   do it. So there was that issue, and then there's also the issue of, you know, I think you tried to

90   serve Howard University's Office of General Counsel, which, if it hadn't been done by you,

91   would have been okay for Howard itself but isn't proper service for the individual defendant. But

92   as I was saying, **the easiest way around all this is if we just use the waiver process**.

93   M. Newman: That's easier than just serving? I'm not clear why you can't accept service, because

94   you represent them.

95   A. Berman: I'm not their registered agent.

96   M. Newman: Does the rule say that they have to be a registered agent?

97   A. Berman: Yes, it does.

98   M. Newman: Can you explain?

99   A. Berman: No, Mr. Newman, I can't. I'm not your attorney. I'm Howard's attorney. I'm trying

100  to give you a fairly easy way to resolve this. **Otherwise, you kind of have to figure out how to**

101  **effect proper service.**

102  M. Newman: I see. Okay. All right.

103  A. Berman: As you know, I sent you a link to the form. You **fill out the form and email it to**

104  **me**. Then, as of the day, you email it to me, which **you can do that today**, that would start our

105  clock for the responsive pleading, and regardless of when I send it back to you.

106  M. Newman: Oh, I see.

107  A. Berman: There is an advantage of using that process to my clients in that it gives us more time

108  than you get under the default rules. But as you know, we already have an extension of the time

109  to respond, so it would just take us out of it beyond that.

110  M. Newman: I'm sorry, I couldn't follow what you just said.

111  A. Berman: Okay, so did you receive all the documents we sent you from the federal court? The

112  motion, the court's order granting our motion for an extension of time?

113  M. Newman: Okay.

114  A. Berman: So you received all that?

115  M. Newman: I received several things through FedEx and email.

116  A. Berman: Okay. So those included, **because we are trying to resolve this issue**, and also

117  because in any case, we would need more time to respond to the complaint, we moved for

118  additional time to respond. We did say in that that we thought service was improper, but we filed

119  the motion to be careful. The court has granted that motion. So right now we already have until, I

120    think it's March 21, to answer the complaint. If we do **the waiver process**, then that starts a

121    clock for us to answer the complaint, either through a motion to dismiss or through an answer. It

122    starts a 60-day clock. So **if you sent me the waiver today**, that would restart the clock. If you,

123    you know, thought if you wanted to try to argue that you've served properly, then we could go

124    that route, but **we're just going to be moving to dismiss on that basis**. And then you'd have to

125    explain to the court why you thought service was proper.

126    M. Newman: I see. Now I'm just looking at what I have received from you. There is a document

127    titled defendant's motion to extend time to respond to complaint, and you've requested a 30 day

128    extension of time.

129    A. Berman: Yeah, and the court has granted that request. It did so almost within an hour of us

130    filing it. So I sent you that as well yesterday.

131    M. Newman: Oh. I don't know if I've received that.

132    A. Berman: Well, I forwarded it to the same email address. I can reforward it.

133    M. Newman: Okay, I would be interested to see that.

134    A. Berman: Is thayray@gmail.com the best email address for you?

135    M. Newman: That's my email.

136    A. Berman: Okay. So that's the one I sent it to, but I can try again if for some reason that didn't

137    make it through.

138    M. Newman: Well, you certainly have gotten emails to me. I've got three emails from you.

139   A. Berman: So the one that has the motion attached. Also, below the motion, I just forwarded the

140   court's minute order because it was just a minute order. It wasn't a standalone document, it was a

141   docket minute order granting the motion.

142   M. Newman: Okay, so extension and order is that extension motion and order.

143   A. Berman: Yep.

144   M. Newman: And you sent this document. That's the one I was just, I think, reading to you.

145   A. Berman: But do you see in the email itself below? If you scroll down the email, there should

146   be under my email to you, like an entry from the court's docket. Do you see that?

147   M. Newman: I think I'm looking at what you're telling me. Does it say from DCD ECF notice?

148   A. Berman: Yes.

149   M. Newman: And what should I be looking at underneath that?

150   A. Berman: The docket text entered by the court.

151   M. Newman: Oh, minute order granting defendant's motion?

152   A. Berman: Yeah, mmhmm.

153    M. Newman: Okay. I do see that.

154   A. Berman: So, right now even if, if, we, right now we have until March 21 to file a responsive

155   pleading. **We explained to the court in our motion that we don't think service was proper,**

156   **but we're trying to resolve that.** The best way to resolve it, the easiest, I think, for you and for

157   everybody, is to **just do the waiver.** Now, the benefit of **the waiver process** to my client is it

158   will give us a little more time beyond March 21 to answer the complaints. So, but I just wanted

159   to disclose that to you. **But otherwise, I think you have to figure out how to properly serve**
160   **every defendant.**

161   M. Newman: I see. I wanted to ask you one thing about that, because you were telling me that I
162   cannot serve through certified mail personally.

163   A. Berman: Yeah, you would have to get somebody else to do that.

164   M. Newman: Now, why do you think that that's the case?

165   A. Berman: I really don't know. I think it's a dumb rule. But it is, there's case law on this, and it
166   is the requirement of the rules both federal and back when we were in Superior Court. It's the
167   same requirement.

168   M. Newman: Well, I spoke to a couple of people at the Superior Court, employees at the
169   Superior Court, and they were unfamiliar with that rule.

170   A. Berman: I'm just, you can look up the rules. You can read them as you see fit. I can't advise
171   you as to how to read them. What I'm conveying is that, you know, if you stand on the way
172   things are right now, my client will likely argue that service was improper. But they are **willing**
173   **to use the waiver process** to just accept service through the waiver because that gives them the
174   benefit of getting a bit of additional time to answer the complaint.

175   M. Newman: Oh, I see. If you're in too much of a hurry, I just want to look up something.

176   A. Berman: Mr. Newman, why don't you think about it and look up whatever you want to look
177   up and just get back to me when you can and let me know if **you want to do the waiver process**.
178   As I said, it's very simple. You would **just send me that form**, that court form that I sent the link

179   to in my first email filled out, but obviously not on my part. And then I will sign it on behalf of

180   all of the defendants, and that is what I can do as their attorney.

181   M. Newman: So, you mentioned that I had hired a professional process server, and they've been

182   in contact with you today?

183   A. Berman: I got a voicemail from somebody, from a young lady that sounded like she was

184   trying to serve me process, which would be difficult both because **I'm on vacation with my**

185   **family,** so I'm not even at my office. But she was also asking if I was authorized to accept

186   service of process for the seven defendants.

187   M. Newman: Did you talk to her directly?

188   A. Berman: No, I did not.

189   M. Newman: **But you're telling me that you would not accept process for the defendants?**

190   A. Berman: **I'm telling you that I cannot under the rules.** Like, she could hand me the

191   envelope, and that wouldn't make service proper.

192   M. Newman: Is that right?

193   A. Berman: **I'm not Howard's registered agent or the individual defendants'.**

194   M. Newman: Okay. You are representing them in this trial, aren't you?

195   A. Berman: In this case? Yes. Mr. Newman. I really, I got to go. As I mentioned, **I'm on**

196   **vacation with my kids here.** I just was trying to give you the courtesy of returning your call.

197   You've got to come to your own decision as to **whether you want to go the waiver process** or

198   you want to try to effect proper service, or you want to just argue that ___ tried to make was

199   proper. That's your choice. **We flagged the waiver process.** It's something we'd be willing to do

200   to bypass these issues.

201   M. Newman: I see. Okay. I'll let you go, then. Thank you for your time.

202   A. Berman: Okay. Thanks a lot. Bye.

203   *On March 1, I paid $358 to a second process server.*

204   <u>2023.03.01 *Phone Conversation*</u>

205   A. Berman: Hi, Mr. Newman. It's Amanda Berman from Crowell & Moring. Can you hear me?

206   Newman: Yeah, I hear you. Can you hear me?

207   A. Berman: Yes. I got your voicemail earlier, so I'm calling to follow up on that.

208   Newman: Okay, so when I talked to you before, you thought that process wasn't served properly

209   and you wanted to suggest a waiver of service. Is that what you want?

210   A. Berman: Well, I am telling you that **my client would execute a waiver of service,** which is

211   the document I sent you a link to, and that is one way to address service and remove any

212   improper service issues.

213   Newman: Okay. Does it matter on your end whether I just re-serve the documents in a different

214   way or you prefer to execute a waiver?

215   A. Berman: **I think my client's preference would be for me to execute the waiver.** But it is

216   ultimately your decision.

217   Newman: Well I just, while I was, actually, just like less than half an hour ago, I paid a fee to a

218   process server, and they're just going to bring it to the university. Is that acceptable?

219   A. Berman: Um, again, I can't give you legal advice, but as I mentioned before, we believed

220   service was improper, not only because you had sent it via certified mail. A server, I believe, will

221   remove that issue, but because the university is not a registered agent for the individual

222   defendants.

223   Newman: But, okay, yeah, I got that part, too, and I mentioned that to the process server. But

224   **aren't the individual administrators present in their offices?**

225   A. Berman: **I have no idea.**

226   Newman: **You don't know if they happen to be working remotely, or wouldn't they**

227   **normally be at work?**

228   A. Berman: **I really don't know and can't say, Mr. Newman.**

229   Newman: Why don't you ask them? Or should I call them? Or is it just that you—. Is the issue

230   that you just want to have more time?

231   A. Berman: Um, no. I mean, the waiver would give us 60 days. We already have 30 to respond to

232   the complaint, so it definitely does give some additional time. But we're just trying, you know,

233   this has to be done properly. I can't advise you as to how to do that. **I'm not sure you're going**

234   **to be able to properly serve the individual defendants by going to the university.**

235   Newman: You're not sure that they'll be there, or you're not sure that it would work if they were

236   there?

237   A. Berman: I'm not sure offhand _____ off the top of my head. [*Laughs.*]

238   Newman: You're not sure, if they were handed the documents, whether that would fulfill the

239   requirements for service of process?

240   A. Berman: Well, Mr. Newman, you can read the rule and come to your own conclusion on that.

241   M. Newman: But I think that's fairly clear. If the process server hands it to them personally, I

242   mean, that fulfills all the requirements.

243   A. Berman: I'm not going to dispute that with you. That might affect [effect?] service.

244   M. Newman: It might affect service. If it affects service, tell me on what basis you think it affects

245   service, because I can work around that. I'm trying to meet your clients, like, where they, you

246   know, half way or more than halfway, but I'm not clear what the—what is your reservation about

247   them being served personally directly by the process server?

248   A. Berman: Well, **my client's preference would be to go through the waiver process**, which

249   then can be done by the attorney. If you choose to try to serve by serving each individual

250   defendant personally, I think that is your choice.

251   M. Newman: I mean, I just wonder what their, why is it their preference? Is it because they want

252   more time or is it some other reason?

253   A. Berman: I mean, I can convey that they also would prefer not to have a process server chasing

254   the individual defendants, and that is one reason why they are **offering to go through the**

255   **waiver route**, which is just this document you email to me and I sign.

256   M. Newman: You don't have to worry.

257   A. Berman: [*Inaudible*.] [*Laughs*.]

258   M. Newman: You don't have to worry about that because I couldn't afford to pay a process

259   server to chase people. I'm a low income plaintiff. So if they're not in their office, the process

260   server is just going to leave. You understand?

261   A. Berman: Okay. I mean, it seems unlikely that even, that you're going to find everyone in their

262   office at any given time.

263   M. Newman: So, would they prefer to be mailed at home from the process server? Because the

264   process server told me they can do that.

265   A. Berman: Well, I can ask my client that. So, are you conveying that **you don't want to use the**

266   **waiver approach?** You want to serve through the regular means?

267   M. Newman: **I don't know that I have a strong preference. I'd like to move more quickly if**

268   **it's not an encumbrance for your clients. I have already paid the fee**, so it seems kind of a

269   simple matter. They can just, they can come to the client's home, they can come to the client's

270   office, they can mail to the client. But you've got to just tell me. I mean, they're not going to try

271   to chase your clients around.

272   A. Berman: I've conveyed that **my clients' preference is to use the waiver process**, which

273   would remove the need for them to try to **chase your clients, the individual defendants, down**.

274   M. Newman: I know. You keep saying that, but **you're not telling me the reason**.

275   A. Berman: Well, I told you because we don't think process can be effected on the individual

276   defendants simply by serving the university. And also, **they would prefer not to have some**

277   **process server banging on their door, whether that's their office or that's their home**.

278   M. Newman: Oh, banging on their door, I'm sure they won't do that. They don't want the

279   process server to come to their home, is that it?

280   A. Berman: They would certainly prefer that not to happen.

281   M. Newman: So the office would be preferable to the home?

282    A. Berman: Uh, I don't know that, I haven't asked my client that question.

283    M. Newman: Can you just shoot me an email? Because if they prefer the home, the process

284    server, I presume, will just come there or mail it to them. I think the easiest thing would just be to

285    mail it to their homes as long as we have their address. Or to present it to their office. Now, can

286    the secretary receive it on their behalf if they're gone?

287    A. Berman: I can't answer that question for you. I really wish you had an attorney. [*Laughs.*] I

288    **can't advise you as to what is proper service.**

289    M. Newman: The process server told me that that was fine. If they're being sued in their capacity

290    as administrators of the university, the documents can be left with a secretary.

291    A. Berman: **Well, you serve how you think is fit, and we'll assess, based on what you do,**

292    **whether we think service is proper.**

293    M. Newman: Well, okay. I mean, **I'm just trying to accommodate your clients the best that I**

294    **can**, but **it doesn't seem like you're telling me all the information that would really facilitate**

295    **that**. I think **you owe it to me at least to find out from your clients the specifics of what they**

296    **prefer and why they prefer it,** so that I can, at the least cost to me financially and the least

297    amount of time, provide those documents to them in the way prescribed by law.

298    A. Berman: Mr. Newman, I have conveyed that my clients' preference is for you to **send us a**

299    **waiver of service of process**, which I could simply execute and send back to you at absolutely

300    no cost to you at all. That is the preference. If you want to go a different route because you want

301    to, you know, avoid any further extension of the time to respond to the complaint, that is your

302    choice. But that is my clients' preference, including because **they would like to spare the**

303    **individual defendants having a process server coming to their office or their home.**

304    M. Newman: Do you need more time? I mean, tell me what, on your end, is that a significant,

305    like, reason for choosing waiver over direct service?

306    A. Berman: I'd say it's twofold. The primary reason is that **my client would prefer not to have**

307    **the individual defendants personally served to avoid that hassle to them**. We would also like

308    to get more time to respond to the complaint, but frankly, the current due date is now the end of

309    this month, I believe, the 29th or something under that court order. If we need more time, we will

310    seek an extension in any event. So it's not a primary driver there.

311    M. Newman: I'm sorry, I just don't understand what you mean when you say "hassle." I don't

312    understand the hassle about someone coming to your office and dropping off a document.

313    A. Berman: Well, that is something my client was trying to avoid.

314    M. Newman: But why?

315    A. Berman: **Well, because having a process server knocking at your door, even if it's the**

316    **office door, is rather——there's an element of intrusion there.**

317    M. Newman: I see. But they don't prefer their homes, you said. So, how do I minimize that

318    intrusion?

319    A. Berman: Well, **the waiver process** would do that. Otherwise, I suppose, the office is less

320    intrusive than the home. [*Laughs.*]

321    M. Newman: That's what I thought. I think a process server could come to the one building

322    because they've got to come there to serve general counsel. Didn't you say that general counsel

323    receives for both the university and the law school?

324    A. Berman: I believe that is correct.

325   M. Newman: So, I think four of the individual defendants have their offices in the same building

326   as the general counsel, isn't that correct?

327   A. Berman: **I don't know, actually.**

328   M. Newman: Well, I've got their addresses based on the university's website. They're all in the

329   same building. So all the process server has to do is walk up a flight of stairs and just hand it to

330   the secretary or to that individual. And I can call them back and say, 'Please try not to be

331   intrusive. They don't want to have any hassle. Just give it to the individual or that individual's

332   secretary.' Would that be acceptable?

333   A. Berman: Mr. Newman, you serve how you see fit, and if you want to do it through the process

334   server, that's fine, and then we'll act accordingly. **I'm not going to give you some advanced**

335   **assurance that we're fine with whatever method.**

336   M. Newman: I'll do the best I can. I hope that it meets your clients' satisfaction.

337   A. Berman: Okay. I had another question for you, which is that I understand that you've

338   requested a meeting with one of the defendants, Dr. Frederick. My client would like to know

339   what the intended purpose of that meeting is.

340   M. Newman: Can you—. Did he receive a call?

341   A. Berman: I believe that he received an online request from you for a meeting.

342   M. Newman: That is false, Counsel. And as you must be aware, the story has broke in the

343   newspapers, and your clients probably can expect a good deal of nefarious contact from

344   members of the public, but I have not reached out to any of your clients directly in the recent past

345    other than this—dealing with you, and as you know, I mailed process to the individuals and to

346    the general counsel. I did not request a meeting with any of the defendants.

347    A. Berman: Okay, you didn't request a meeting with Dr. Frederick? I will convey that.

348    M. Newman: No, and I have no knowledge about that until you just told me. But I can tell you

349    I've received some unsolicited communications from the public, and so I'm not surprised if your

350    clients also are receiving things, and could be someone posing as me. So, you know my email

351    address. If you receive something from my email, then either that's me or I've had a breach of

352    security. So, I would normally use my—.

353    A. Berman: I have, I'm looking at, they forwarded me the request, and it does give your email as

354    mnewman@gmail.com. Is that an address you use?

355    M. Newman: No.

356    A. Berman: 212-864-7645. Is that not you, your phone number?

357    M. Newman: That doesn't sound familiar. No.

358    A. Berman: Okay, so it was a request for a virtual meeting, so I can convey that this is not

359    actually coming from you.

360    M. Newman: I have not submitted either of those, anything that you've said, and I'm not familiar

361    with that email address or that phone number. No.

362    A. Berman: Okay, thank you. I appreciate it.

363    M. Newman: Okay. Yes. **I will try to be as forthcoming with you. I would appreciate the**

364    **same from you. We both have a statutory obligation, and more importantly, we have an**

365    **ethical obligation not to use dirty tactics or manipulate the other party.** I'm not doing

366   anything, I'm not—if you receive a communication from me, it will almost certainly be from this

367   phone number or thayray@gmail.com. And in that regard, you may know **your clients changed**

368   **my password on my university email**.

369   A. Berman: Okay, I mean, did you expect that to remain available to you after you left the

370   university?

371   M. Newman: I'm not going to answer that, but I informed your clients about the lawsuit one day

372   after I filed my complaint. And their first action in response was to change my password on my

373   university email. Of course, you know, they're obligated to preserve the records in that email

374   account, but that will come out, I mean, if I need anything, I can certainly request it through

375   discovery. But I had access—I had full access to all emails, from all past emails up until that

376   point, and they may have limited my ability to send or receive emails after my expulsion or

377   sometime before the expulsion, but only after they received word of the filing did they change

378   my password so I have no access whatsoever. And a lot of the evidence that I rely on in the

379   complaint is preserved in that email account. So please put them on notice if you haven't already,

380   those records must be preserved. And I would like to regain access, because it's a very simple

381   thing to log into the email, and I can access any email by date or by sender or receiver. And I'm

382   going to need that at some point. But unless you see some strategic or otherwise a lawful cause

383   for cutting off my access to that information, I would appreciate having that email account

384   restored so that I can access it to, better to write pleadings and motions and so forth.

385   A. Berman: As I said, I will convey that request to my clients.

386   M. Newman: Okay, thank you.

387   A. Berman: All right. Have a good afternoon.

388    M. Newman: Same to you, Ms. Berman.

---

389                    <u>2023.03.01, 3:19 PM *Email*</u>

390    Michael –

391    Following up on our call, I spoke to my client, and **Howard's Office of General Counsel will**

392    **accept service of process on behalf of all Defendants**[1]**.** You can tell your process server that the

393    office is **on the 4th Floor of 2400 6th Street**[2]. Alternatively, you can have the process server

394    contact Deputy General Counsel Zach Shapiro at the below email to arrange service, as Howard

395    is closed next week for break. **Zach is also willing to accept service via email**[3] to his email:

396    Zachary.Shapiro@howard.edu

397    Best,

398    Amanda Shafer Berman

---

399                    <u>2023.03.02, 1:11 PM *Email*</u>

400    Dear Ms. Berman,

401    Thank you, and please tell your clients I appreciate not having to go to such great lengths as

402    before in serving process to them. **We can and should treat one another civilly even in the**

403    **midst of our legal disputes.**

---

[1] A third party who attempted to serve process at Howard University's general counsel office on
March 3 was turned away.
[2] In fact, the entire 4th floor was inaccessible and under construction. *See* ¶¶ 441-44.
[3] On March 3 I emailed Zachary Shapiro. Mr. Shapiro never responded.

404    So that you don't think I was misleading you, I just want to let you know the second process

405    server was willing to cancel my order and refund the fee in full. (The first process server had

406    given a partial refund.) As you may know my family is low income, and the process server fees

407    were becoming worrisome. I may know a Howard Law student who would be willing to deliver

408    the seven sets of papers to general counsel. I can contact Mr. Shapiro to set up an appropriate

409    time for that delivery after I check with that student or another party.

410    Sincerely,

411    Michael Newman

412                         <u>2023.03.02, 4:04 PM</u> *Email*

413    Hi Mr. Newman –

414    Thanks for your message below. I appreciate your desire to avoid service fees.

415    Given that it sounds like you are still trying to find someone to effect service on the Office of

416    General Counsel, I want to **once more suggest that we agree to use the waiver process**. That

417    would avoid any need for you to do that--and also the difficulty and delay that may arise if you

418    are not able to find someone to serve process by the end of this week since the University is

419    going to be closed for break next week. I am attaching the completed waiver form. If you simply

420    **emailed me this form back with a statement that you are requesting that Howard waive**

421    **service of process**, that would complete your service obligations. I would then sign the form,

422    and I think I can even file it on the docket (although the plaintiff usually does that, I realize you

423    may not yet be able to file electronically in the federal court). The only potential downside for

424    you is that Howard and the other Defendants would then have a longer period (60 days from

425    your request for the wavier, as opposed to 21 days from formal service of process) to file an

426  answer or other responsive pleading. But as I mentioned when we talked, we may move for

427  additional time to respond to the complaint even if service is effected formally. Further, my client

428  has authorized me to offer that, if we use this waiver form and start the 60-day clock for a

429  response accordingly, we will not seek any further extension of time to answer/file a responsive

430  pleading beyond that unless there is an emergency.

431  So again, let me know if you want to request that I **execute the attached waiver of service** and

432  file it, thus **bringing this service saga to a close** without you needing to find a third party or pay

433  a process server to serve at the University's Office of General Counsel.

434  Best,

435  Amanda Shafer Berman

436  *On March 3 the second process server refunded their $358 fee in full.*

437  <u>2023.03.06, 12:03 PM *Email*; Resent 2023.03.07, 12:44 PM</u>

438  Dear Ms. Berman,

439  Last Friday summonses and complaints were emailed to Mr. Shapiro at the address you provided.

440  Could you confirm this constitutes satisfactory service and no further steps need be taken?

441  A friend also attempted to deliver physical copies to the general counsel's office Friday. See the

442  two attachments. She learned **the entire 4th floor is under construction and inaccessible**. The

443  **general counsel's office, apparently on the 3rd floor, was unattended** and was to be closed

444  during the week of March 6.

445  MRN



446

---

447                              2023.03.07, 1:31 PM *Email*

448   Mr. Newman –

449   Apologies for the delayed response; I've been on business travel. Yes, Defendants agreed to

450   accept service via email to Howard University's Office of General Counsel (Mr. Shapiro) and so

451   no further steps need to be taken. Best,

452   Amanda Shafer Berman

---

453                              2023.03.07, 1:36 PM *Email*

454   Thank you for confirming. I will ask the sender to file an affidavit accordingly.

455   Regards,

456   MRN

---

457                              2023.03.13, 10:28 AM *Email*

458   Dear Ms. Berman,

459   Earlier you indicated you planned to petition the Court for another extension. Are you still

460   planning on doing so, or are Defendants prepared to submit a pleading?

461   MRN

---

462                          <u>2023.03.14, 1:21 PM</u> *Email*

463   Mr. Newman –

464   I have consulted with my client and we do plan to ask the Court to give Defendants until April 26

465   to file a responsive pleading, **given** the length and breadth of the complaint and **the time we**

466   **have spent sorting out the service issues**. Please let me know if I can represent that you do not

467   oppose that request. Best,

468   Amanda Shafer Berman

---

469                          <u>2023.03.15, 9:19 AM</u> *Email*

470   Dear Ms. Berman,

471   I'm afraid I cannot endorse your request but, rather, am opposed to it.

472   Your first communication of February 16 sought to persuade me to agree to a waiver of service,

473   which you have acknowledged would have granted you 60 days from the date of signing. You

474   continually pressed me to do so up to and including your email dated March 2. It became clear at

475   some point that delaying the progression of this case was of great importance to you for reasons

476   never entirely clear. What was clear however was that "improper service" was never relevant to

477   your attempts to buy time. **Your claim to that effect in your motion to extend time, in my**

478   **view, violated Rule 11. If you base a second motion to extend time on the same suspect basis**

479   **I am prepared to move for sanctions against you and your firm.** You must base your motion ▾

480   on a legitimate rationale and not a pretext.

481   MRN

---

482   *On March 15, Defendants' counsel filed their second Motion to Extend Time.*

Exhibit 4

Certified Mail Receipt Acknowledgements

from USPS Website

Page 1 of 3

**Tracking Number:**

**70160340000051828450**

Copy    Add to Informed Delivery

Remove X

**Latest Update**

Your item was delivered to the front desk, reception area, or mail room at 12:19 pm on January 27, 2023 in WASHINGTON, DC 20059.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

✓ **Delivered**
**Delivered, Front Desk/Reception/Mail Room**
WASHINGTON, DC 20059
January 27, 2023, 12:19 pm

See All Tracking History

Text & Email Updates ⌄

USPS Tracking Plus® ⌄

Product Information ⌄

See Less ∧

---

**Tracking Number:**

**70160340000051828467**

Copy    Add to Informed Delivery

Remove X

Feedback

**Latest Update**

Your item was delivered to the front desk, reception area, or mail room at 12:19 pm on January 27, 2023 in WASHINGTON, DC 20059.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

✓ **Delivered**
**Delivered, Front Desk/Reception/Mail Room**
WASHINGTON, DC 20059
January 27, 2023, 12:19 pm

See All Tracking History

See More ⌄

---

**Tracking Number:**

**70160340000051828443**

Copy    Add to Informed Delivery

Remove X

**Latest Update**

Your item was delivered to the front desk, reception area, or mail room at 12:19 pm on January 27, 2023 in WASHINGTON, DC 20059.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

✓ **Delivered**
**Delivered, Front Desk/Reception/Mail Room**
WASHINGTON, DC 20059
January 27, 2023, 12:19 pm

See All Tracking History

See More ⌄