## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL R. NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No.: 1:23-cv-00436-TNM |
| | ) | |
| | ) | |
| HOWARD UNIVERSITY SCHOOL | ) | |
| OF LAW, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFF'S [OPPOSED] MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, MODIFICATION OF THE PROTECTIVE ORDER AND JOINT STATEMENT

### I. Introduction

Plaintiff respectfully moves the Court for clarification or, in the alternative, modification of certain provisions in the Stipulated Protective Order ("PO") and/or the parties' Joint Statement ("JS"). Specifically, Plaintiff seeks:

1.      Clarification that his interpretation of the PO and JS—limiting confidentiality designations and redactions to legitimately private information, supported by "good cause" under Fed. R. Civ. P. 26(c), and prohibiting their use as a shield for non-sensitive or inculpatory materials—is reasonable and valid.

2.      Clarification that such protections do not extend to materials already in Plaintiff's possession or previously disclosed publicly; that the PO does not prevent dissemination or publication of deposition contents unless properly classified "Confidential"; and that ambiguous terms in the PO are to be construed narrowly to avoid undue restriction of Plaintiff's constitutional and common-law rights.

1

3.      If the Court finds the current language unclear or contrary to the above interpretations, modification of the PO and/or JS to reflect these limitations expressly, in conformity with Fed. R. Civ. P. 26(c) and in exercise of the Court's inherent authority to manage its proceedings, and with such other equitable relief as necessary to prevent abuse of the PO and JS—including vacatur in whole or in part should the Court find no mutual assent on material terms.

4.      Void the PO if the Court finds Plaintiff entered under conditions of duress, lack of mutual assent, or mistake.

## II. Background

The parties stipulated to the PO with the stated intent of safeguarding "student education records," personally identifying information ("PII"), and "sensitive commercial, financial, business, or proprietary information." ECF No. 55, at 1. As Defendants acknowledged in the March 2024 JS, the PO was intended "to safeguard the confidential information of students and to set forth privilege protocols"—not to restrain speech or shield reputational harm. ECF No. 46, at 8. Defendants have since invoked the PO to restrict Plaintiff's use of deposition excerpts, video clips, and documents Plaintiff possessed independent of discovery.

The PO states that it "shall govern the handling of all documents and any other material *produced or otherwise disclosed* ("Discovery Material") by or among any Party or non-party providing Discovery Material…." ECF No. 55, at 2 (emphasis added). By "produced or otherwise disclosed," the PO limits its reach to materials exchanged through discovery and does not extend to materials obtained or created outside of that process.

The PO further provides, "All disputes concerning matters falling within the scope of or relating to the interpretation of this … Order shall be submitted for ruling to the Court." ECF No. 55, at 5. It allows a party to object to any "CONFIDENTIAL" designation, requires the

parties to attempt resolution in good faith, and if unsuccessful, requires the designating party to seek a ruling from the Court. *Id.* The PO expressly states that "[n]othing in this Discovery Confidentiality Order shall shift any burden of proof, including the burden of establishing that any Discovery Material validly constitutes 'CONFIDENTIAL' material, which burden remains on the party that designates such Discovery Material or testimony as 'CONFIDENTIAL.'" *Id.*

### III. Legal Standard and Contract Principles

The PO operates as a judicially enforceable agreement among the Parties and the Court and is to be interpreted according to general principles of contract law. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975) ("Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the [order]…"). Such principles include the plain meaning rule and the rule that a contract be interpreted in light of its intended purpose, as well as doctrines such as mutual assent and mistake. Additionally, a PO is not a mere private contract between the parties but a judicial instrument issued under the authority of the Federal Rules of Civil Procedure. Rule 26(c)(1) both empowers and limits courts in crafting such orders, requiring consideration not only of a party's asserted need for confidentiality but also of the public's interest in access.

The PO is intended to safeguard legitimate privacy and proprietary interests—not to serve as a license for strategic concealment of embarrassing or incriminating material. In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994), the Third Circuit recognized a "balancing process" governing PO's that "should be applied by courts when considering whether to grant confidentiality orders *at any stage of litigation*, including settlement." *Id.* (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.

L. Rev. 427, 432–33 (1991)) (emphasis added). The court must weigh "the harm to the party

seeking protection (or third persons) and the importance of disclosure to the public," with

"privacy interests … diminished when the party … is a public person subject to legitimate public

scrutiny." *Id.* Basing a PO on "embarrassment … may be especially difficult for a business

enterprise," which "must demonstrate that the embarrassment will be particularly serious." *Id.*

(citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 484

U.S. 976, 108 S. Ct. 487, 98 L. Ed. 2d 485 (1987)). "Circumstances weighing against

confidentiality exist when confidentiality is being sought over information important to *public

health and safety*[1] … and when the sharing of information among litigants would promote

fairness and efficiency…." *Id.* (emphasis added).

## IV. Discussion

### A.  Applying Contract Principles to the PO

1.  *Plain Meaning Rule.* Courts interpret contract language according to its ordinary and

natural meaning unless the text is ambiguous. The PO here is unambiguous: It governs only the

"handling of all documents and any other material *produced or otherwise disclosed* (*'Discovery

Material'*)." ECF No. 55, at 2 (emphasis added). By its plain terms, the PO applies only to

*confidential* material produced in *discovery*, not to documents such as emails or screenshots that

a party already possessed independently. Extending the PO to such materials rewrites its scope

and effectively transforms it into an unauthorized gag order. The Court may not insert terms that

the parties did not negotiate or adopt.

---

[1] Although Plaintiff's related claims have been dismissed, the circumstances involving Howard's
mandatory COVID-19 vaccination policy and contemporaneous death of a classmate fall within
the category of public health and safety matters that weigh in favor of public access and scrutiny.

In its January 22, 2025, Memorandum Order, however, the Court concluded that "[b]y its plain terms … the protective order cover[ed] any document that [Plaintiff] uses in support of his case, regardless of when he obtained it." ECF No. 100, at 3. Respectfully, this conclusion departs from the plain language of the PO, which by its terms governs only materials "produced or otherwise disclosed" in discovery, not those obtained independently. Extending the PO beyond its text enlarges the category of "Confidential" material beyond what the Parties stipulated.

2. *Parol Evidence Rule.* Although the "plain meaning" rule is meant to anchor interpretation in the text itself, an inherent limitation can be that two readers encountering the same text each regards his own distinct and opposing meaning "plain." Further still, either may declare a reading "plain" and treat it as self-evident without further analysis. The Court's January 22, 2025, Order did just that, providing no analysis of the text, "all documents and any other material produced or otherwise disclosed … in this case," which it found to mean "the protective order cover[ed] any document that Newman uses in support of his case, regardless of when [or, presumably, *how*] he obtained it." ECF No. 100, at 3. Although the Court's decision rested primarily on *Hubbard* rather than the PO, it also concluded that the PO, "[b]y its plain terms," compelled the same result, but without pointing to any textual structure, defined term, incorporated provision, or other rationale to support that reading.

Plaintiff submits that unless the Court finds the PO's scope clearly limited to "Discovery Materials" defined as "documents and … other material produced or otherwise disclosed," the language is, at minimum, ambiguous. And where text is ambiguous, courts must turn to parol evidence to illuminate the parties' intended meaning, the context in which the language was drafted, and the practical consequences of competing interpretations. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1047 (D.C. Cir. 2017) ("If we find that the relevant clause is subject to more than

5

one reasonable interpretation, we consider 'what a reasonable person in the position of the parties would have thought the disputed language meant'" (quoting *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 278 (D.C. Cir. 2014) (quoting *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006))).

(a)    *The Joint Statement ("JS")*. In their March 2024 JS, Defendants themselves stated:

> *Defendants believe that a Protective Order is needed in this case to safeguard the confidential information of students and to set forth privilege protocols.*

ECF No. 46, at 7.

This representation to Plaintiff and the Court indicates that Defendants sought a PO for two stated purposes only. Of these, "confidential information" is most reasonably understood to refer to inherently private data such as Social Security numbers, grades, LSAT scores, or comparable records maintained in *confidence*. It cannot reasonably be construed to encompass, for example, a message voluntarily posted in a GroupMe thread accessible to 50, 150, or more students, none of whom are under any comparable obligation of confidentiality.

(b)    *Email correspondence*. On June 8, 2024, Plaintiff emailed Defendants regarding the PO Defendants had drafted and presented him, stating, "[R]equests to keep information concealed should arise from the need to protect individual privacy, not to hide institutional wrongdoing." Ex. A, at 1. He also indicated he had raised the same concern with Defendants repeatedly. *Id.* Plaintiff added, "[W]hile I agree that records containing PII of students as defined by FERPA should be protected, beyond PII, I have difficulty seeing any legitimate interest Defendants can have in concealing 'education records.'" *Id.* He invited specific examples, which were never proffered. *Id.* And he expressly objected to blanket use of the term "education records" that "either lend themselves to abuse or do not represent a legitimate interest worthy of concealment." *Id.*, at 2. Plaintiff asserted that "'education

records' [was] a broad term that could arguably apply to practically every document" and stated, "Where individuals' identities are safely obscured, any data related to academic performance, disciplinary records, medical and counseling records, financial information, and most particularly racial demographics, should not be designated as confidential." *Id.* He cautioned that "the terms 'sensitive,' 'financial,' and 'business'" were subject to abuse. *Id.*

Plaintiff emphasized that the PO must not be misused "to shield Defendants from public scrutiny, avoid embarrassment, suppress negative publicity, or prevent accountability for wrongful actions. Such self-serving motivations do not serve any legitimate confidentiality interest and instead function only to insulate Defendants from scrutiny. Confidentiality should be reserved for genuinely sensitive information, and any attempts to misuse confidentiality designations to conceal misconduct, negligence, or other wrongful actions will be challenged vigorously." *Id.*

3. *Avoidance of Absurd Results.* On January 26, 2021, Plaintiff emailed Howard University President Wayne Frederick a screenshot of a GroupMe conversation between classmate Michael Annan and himself. This GroupMe group, Plaintiff believes, included 50 to 150 Howard Law students. In April 2024, Plaintiff produced the conversation to Defendants in discovery. In July 2024, Defendants re-produced it back to Plaintiff—with redactions.

Plaintiff filed his unredacted version twice before the Court: Exhibit 2 to his May 2023 Opposition [ECF No. 21-1] and Exhibit A to a January 2025 Reply [ECF No. 95-1]. After that second filing, Defendants asked Plaintiff to redact student names. Plaintiff declined to do so himself but agreed to allow Defendants to replace his exhibit with their own redacted version.

The Court instead ordered Plaintiff to redact the exhibit and re-file it. The Court rested its reasoning primarily on *Hubbard* factors. However, it also held that the PO required this outcome,

stating that "by its plain terms … the protective order covers any document that Newman uses in support of his case, regardless of when he obtained it." ECF No. 100, at 3.

Interpreting the PO to cover documents Plaintiff created or possessed independent of discovery would mean that a conversation to which Plaintiff was himself a party, which he produced to Defendants, and which any of 50 to 150 classmates may publish without restriction, must nonetheless be treated by Plaintiff as confidential. This is the type of outcome courts have rejected when construing agreements. *See Keepseagle*, 856 F.3d at 1047 (avoiding interpretation that "would yield absurd results") (citing *U.S. v. Winstar Corp.*, 518 U.S. 839, 907 (1996) (avoiding interpretation of contract that "would be absurd")); and *Am. First Inv. Corp. v. Goland*, 925 F.2d 1518, 1521 (D.C. Cir. 1991) (avoiding interpretation that would "produce an absurd result"). Such a reading extends far beyond any reasonable understanding of "confidential information" and encompasses material that was never truly private. It risks distorting the PO's intended function and diminishing its legitimacy. (Plaintiff does not address the Court's *Hubbard* analysis here but reserves the right to seek broader review on appeal.)

4. *Lack of Consideration.* Plaintiff understood that signing the PO was a prerequisite to obtaining discovery from Defendants. Only later did he learn that Defendants were obligated by law to provide the same discovery regardless. Thus, the PO granted Plaintiff no rights he did not already possess, while conferring upon Defendants broad new authority to: (1) designate as "Confidential" categories of evidence lacking genuine confidentiality; (2) redact identifying information from communications central to Plaintiff's claims; (3) withhold relevant communications with OGC regarding the very events at issue; and (4) restrict Plaintiff's use of materials he created or obtained entirely outside discovery. In effect, Defendants received

expansive protective mechanisms while Plaintiff received nothing beyond what the Federal Rules already guarantee.

By analogy to contract principles, such an agreement is illusory: one side gained significant new restrictions and privileges, while the other gained no reciprocal benefit. In practical terms, the PO imposed only burdens on Plaintiff without corresponding consideration. Should the Court determine that the PO was entered without valid consideration or mutuality, it may exercise its discretion to declare the agreement void or otherwise relieve the parties from its constraints.

5. *Contra Proferentem*. The PO was drafted by Defendants and negotiated in part, but it ultimately incorporated Defendants' proposed language on key points. Under the doctrine of *contra proferentem*, any ambiguity in scope must be construed against them.

From the outset, Plaintiff understood "Confidential Material" to mean truly private information such as Social Security numbers, grades, LSAT scores, or proprietary business information—not student names or statements closely linked to events in question, already known to him, or broadly shared before litigation. This understanding was made explicit during June 2024 negotiations. When Defendants proposed language that could extend to student names, Plaintiff responded:

> "[W]hile I agree that records containing PII of students as defined by FERPA should be protected, beyond PII, I have difficulty seeing any legitimate interest Defendants can have in concealing "education records." Ex. A, at 1.

At Mariela Olivares's deposition two months later, Defendants' counsel attempted to designate as "Confidential" a GroupMe conversation that Plaintiff himself participated in, a transcript of which he himself had generated, shared with President Frederick (*supra*), and

produced through discovery. As a result of counsel's "Confidentiality" designation at deposition,

Plaintiff emailed Defendants on August 11, 2024, stating:

> "I don't understand how [such material] qualifies for protection under the terms of [the] stipulated protection order." Ex. B, at 1.

> Ms. Berman then replied,

> "A key purpose of the confidentiality designation is to make clear that personal identifying info of students is not publicly filed. So while you may already know it, that does not mean no protection is merited." *Id.*

>  Plaintiff immediately then clarified:

> "I want to state for the record that I never willingly agreed to treat information already known to me as confidential. My understanding was that I was bound to treat applicable materials you produced for me as confidential (and that such materials would be open to my own purview), while Defendants were bound to treat applicable materials I produced for them as confidential." *Id.* at 1-2.

Defendants' application of the PO to require redaction of a conversation Plaintiff

generated and shared before litigation reveals a latent ambiguity. Defendants' current

interpretation was never disclosed during negotiations, was contrary to Plaintiff's stated

understanding at the time, and expands "Confidential Material" beyond a reasonable reading.

Under the doctrine of *contra proferentem*, and consistent with principles recognized in cases

such as *Mastrobuono v. Shearson Lehman Hutton, Inc.*, the ambiguity must be resolved against

Defendants as the drafters: "The reason for this rule is to protect the party who did not choose the

language from an unintended or unfair result." 514 U.S. 52, 62-63 (1995). The PO should

therefore be construed narrowly to apply only to genuinely private information obtained through

discovery, not to information Plaintiff possessed independently or that was already publicly or

broadly disseminated.

    6. *Heightened Contra Proferentem: Disparate Sophistication and Negotiation Pressure*.

Any ambiguity in scope must be construed not only under the standard *contra proferentem*

principles but with heightened scrutiny where one party possessed overwhelming legal sophistication and bargaining leverage.

From the outset, Plaintiff made clear that confidentiality protections should be limited to genuinely private information such as Social Security numbers, grades, or proprietary business information—not material known to him or broadly shared. *See* Ex. A, at 1 ("[R]equests to keep information concealed should arise from the need to protect individual privacy, not to hide institutional wrongdoing"). Defendants' counsel reinforced that understanding, assuring him that "education records is not a broad term, but a term of art, under FERPA, that defines Howard's responsibilities to maintain confidentiality over its students' information," and citing 20 U.S.C. § 1232g and 34 C.F.R. § 99.3. Ex. A, at 7.

At the same time, Defendants conditioned production of discovery on Plaintiff's agreement to the PO. *See* Ex. A, at 4 (June 11, 2024 email: "[M]ost parties enter into a [PO] before producing any documents…. We informed you that was our intent here when we sent the draft PO almost a month ago….") By presenting the PO as a routine measure—something "most parties" execute before any production—Defendants conveyed that signing was standard practice and not open to serious negotiation. At the same time, they made clear that they would withhold all production until it was signed. That created real pressure: Plaintiff, acting without counsel, feared—indeed, nearly panicked—that without prompt agreement he would not receive discovery in time to meet case deadlines.

Plaintiff's understanding was straightforward: Defendants would provide access to truly sensitive information, and in return, Plaintiff would agree not to misuse it. His conception of "sensitive" was narrow—limited to trade secrets, Social Security numbers, and comparable

data—and nothing in Defendants' assurances suggested that the PO could be used to shield non-sensitive materials or conceal evidence of institutional misconduct.

Critically, Plaintiff did not understand that Defendants were already legally obligated to produce responsive discovery absent a PO, that Rule 26(c) required them to show "good cause" for any confidentiality restriction, or that the PO would operate asymmetrically—conferring substantial protections and privileges on Defendants while giving Plaintiff nothing beyond what the Federal Rules already guaranteed. The PO conferred no additional discovery rights, no reciprocal benefits, and no assurances beyond existing law. Defendants' portrayal of the PO as a prerequisite to Plaintiff's access to discovery was a premise Plaintiff later learned was false. While Plaintiff does not here assert a fraud claim, the circumstances strongly suggest that he was misled into signing an entirely one-sided agreement, waiving important rights (including access to privilege logs and unredacted identities) for no compensating benefit.

In these circumstances, where a legally unsophisticated *pro se* party expressly raised concerns about overbreadth, relied on opposing counsel's assurances, and signed under pressure of imminent deadlines, any ambiguity in the PO must be resolved with heightened *contra proferentem* scrutiny to prevent the drafting party from expanding the agreement beyond the mutual understanding reached at the time of negotiation.

7. *Duress.* Even if the Protective Order's language were unambiguous, it is unenforceable if procured by duress. Duress in contract law exists where one party's assent is induced by an improper threat that leaves no reasonable alternative. *See* Restatement (Second) of Contracts §§ 174–177. Under § 174, a contract formed by physical compulsion is void; under §§ 175 and 177, a contract induced by an improper threat or undue influence is voidable at the

election of the coerced party; § 176 defines "improper threat" to include threats of crime, tort, bad-faith legal action, or acts without legitimate purpose, among others.

Here, Defendants' counsel expressly conditioned the start of document production on Plaintiff's signing the PO:

> [M]ost parties enter into a [PO] before producing any documents…. We informed you that was our intent here when we sent the draft PO almost a month ago…. In addition to negotiating the [PO], we are currently collecting documents from our client and will produce responsive documents on a rolling basis after our review and consistent with a [PO] and federal discovery practice. Ex. A, at 4.

This was not an offhand remark but part of a repeated message: *no PO, no discovery.* By conditioning all production—including materials not plausibly confidential—on Plaintiff's execution of the PO, Defendants effectively presented him with a coercive choice: execute the agreement or risk missing critical deadlines.

Plaintiff, acting *pro se* and without knowledge that Rule 26(c) required "good cause" for any protective order, reasonably but mistakenly believed that the Federal Rules permitted Defendants to withhold all discovery until he signed. He further understood the PO to be a routine, boilerplate form intended only to safeguard narrow categories such as trade secrets and Social Security numbers—not a mechanism to redact names, shield public information, or conceal misconduct. Under these circumstances, Plaintiff's assent was not the product of free and informed choice but was obtained through leverage inconsistent with Defendants' discovery obligations. Consent so obtained cannot bind Plaintiff to an interpretation extending beyond the limited understanding on which he agreed and supports setting aside the agreement.

8. *Lack of Mutual Assent and Mistake.* No contract is enforceable without a meeting of the minds on its material terms. Courts apply an objective standard—what a reasonable person in the position of the other party would have understood from words and conduct. As the

Restatement (Second) of Contracts § 19 explains, "The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." Here, Plaintiff's conduct in signing the PO cannot reasonably be construed as assent to the sweeping confidentiality powers Defendants now claim, because Plaintiff contemporaneously and explicitly rejected such scope. There is, then no contract. *See Apprio, Inc. v. Zaccari*, 104 F.4th 897, 906 (D.D.C. 2020) (holding that an enforceable contract existed *only* where "there was an agreement to all material terms" *and* "the parties intended to be bound") (quoting *Duffy v. Duffy*, 881 A.2d 630, 636–37 (D.C. 2005)). *Apprio* further held that "'[t]he intentions of parties to a contract can be found from written materials, oral expressions and the actions of the parties' as well, if needed beyond the written language of the contract." *Id.*, at 907 (quoting *Duffy*, 881 A.2d, at 637).

Plaintiff's assent was conditioned on the understanding, reinforced by Defendants' counsel, that the Order's protections would apply narrowly to legitimately private materials such as Social Security numbers, grades, or trade secrets and would not be used to withhold or redact non-sensitive documents or evidence of institutional misconduct. Defendants, by contrast, have interpreted the PO to authorize sweeping "Confidential" designations and redactions far beyond what was discussed or reasonably contemplated at the time of signing. This divergence is not a minor afterthought but goes to the core of the agreement. Material terms in dispute include: (a) categories of information eligible for confidential designation; (b) permissible grounds for redaction; (c) applicability of confidentiality to materials already in Plaintiff's possession or already publicly disclosed; and (d) allocation of burdens under Rule 26(c). Without agreement on these essential points, no enforceable contract exists.

If the Court finds mutual assent existed, the agreement is unenforceable due to a material mistake induced by Defendants' representations and omissions. Plaintiff understood from Defendants that confidentiality designations would be limited to genuinely sensitive information. This understanding was central to his decision to sign the PO. If they did not share this understanding, they nonetheless permitted Plaintiff to proceed under it, deliberately fostering the belief while intending to apply the PO more broadly. Such inducement or acquiescence in a material mistake justifies equitable relief, in the form of rescission or reformation.

9. *Interpretive Doctrines Favoring Narrow Construction.* Courts apply a range of interpretive canons to avoid expansive readings of contractual terms that would unduly restrict a party's rights or create unintended obligations. Contractual provisions purporting to waive or restrict constitutional rights are construed narrowly; any ambiguity is resolved against forfeiture of such rights. Further, courts avoid interpretations that render contract language superfluous or meaningless. Courts prefer that provisions be consistent with one another and with the contract as a whole. Where a term admits of more than one reasonable interpretation, courts favor the construction that aligns with the instrument's stated purpose and avoids constitutional conflict.

Here, the PO's restrictions on disclosure and filing of materials must be construed no more broadly than necessary to safeguard legitimately confidential information, consistent with its stated purpose and the parties' reasonable expectations. A narrow reading is the only construction that both preserves Plaintiff's First Amendment rights and prevents the PO from becoming a tool to suppress non-sensitive or merely embarrassing evidence.

**B. Protective Orders Under Rule 26(c)**

1. *The PO Exceeds the Scope of Rule 26(c) and Lacks the Required "Good Cause" Findings.* Rule 26(c)(1) permits a PO "for good cause" to prevent "annoyance, embarrassment,

oppression, or undue burden or expense" in discovery. By design, such orders are narrowly tailored to those purposes.

The Ninth Circuit has held,

A court abuses its discretion when it "fails to identify and apply the correct legal rule to the relief requested" or if its application of the correct standard was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (2011) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 577 (1985))) (cleaned up).

*In re Roman Catholic* further emphasized that under Rule 26(c), the party seeking protection bears the burden of showing specific prejudice or harm absent the order. *Id.* at 424-25; *Phillips*, 307 F.3d at 1210. The court added, "When the protective order 'was a stipulated order and no party ha[s] made a "good cause" showing,' then 'the burden of proof ... remain[s] with the party seeking protection.'" *Id.* (quoting *Phillips*, 307 F.3d at 1211, n.1).

Where Plaintiff challenges the PO, Defendants bear the burden under Rule 26(c) to show "good cause" for each restriction they seek. The Court must balance any such showing against Plaintiff's right to access information essential to his claims, the public's interest in open judicial proceedings, and the narrow scope of confidentiality that Rule 26(c) permits. Defendants' reliance on the PO to justify broad redactions and "Confidential" designations should be scrutinized in light of these limitations. Rule 26(c) does not authorize restricting the use or dissemination of materials that are not legitimately confidential. Protective orders must be "narrowly drawn" and "precise." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984). Further, "before a court should issue a protective order that restricts expression, it must be satisfied that 'the harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise; and there must be no alternative means of protecting

16

the public interest which intrudes less directly on expression." *Rhinehart*, 467 U.S. 20, 26 n.6

(quoting *In re Halkin*, 598 F.2d 176, 191 (D.C. Cir. 1979)).

> In *Pansy v. Borough of Stroudsburg*, the Third Circuit emphasized that

> simply because courts have the power to grant orders of confidentiality does not mean
> that such orders may be granted arbitrarily. Disturbingly, some courts routinely sign
> orders which contain confidentiality clauses without considering the propriety of such
> orders, or the countervailing public interests which are sacrificed by the orders. Because
> defendants request orders of confidentiality as a condition of settlement, courts are
> willing to grant these requests in an effort to facilitate settlement without sufficiently
> inquiring into the potential public interest in obtaining information concerning the
> settlement agreement. The public's interest is particularly legitimate and important where,
> as in this case, at least one of the parties to the action is a public entity or official.

> 23 F.3d 772, 786-87 (3d Cir. 1994).

PO's are judicial instruments subjective to ongoing oversight, thus, "the appropriate

procedure for challenging a confidential order is by moving the court for relief." *Pansy*, 23 F.3d

at 785. *See also EEOC v. Nat'l Children's Center., Inc.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996)

(remanding for failure of district court to "[make] the required finding of 'good cause'").

### V. Requested Clarification and/or Modification of the PO and/or JS

Plaintiff respectfully requests that the Court construe the PO and JS consistently with

their original and intended scope: narrow measures designed only to safeguard genuinely private

or sensitive information, not broad instruments for suppressing non-confidential evidence. To

that end, Plaintiff seeks clarification, or if necessary modification, on points described below.

### A.  Requests for Clarification

1. *Deposition Recordings.* Plaintiff has notified Defendants and the Court of his intent to publish

video recordings. ECF No. 95, at 3, ECF No. 98, at 5. In conferring with Defendants regarding

this Motion, Plaintiff provided an advance view of a specific two-minute excerpt he intended to

post online. *See* Ex. C, at 76. Defendants objected categorically, threatening to "move for an

emergency supplemental protective order," *id.* at 104, and later to "take appropriate protective action," (*id.* at 165), despite Plaintiff's assurance that no publication would occur without Court approval (*id.* at 134).

The transcript of the excerpt (Ex. D) confirms that it contains no material designated "Confidential" under the Protective Order. Plaintiff gave repeated, advance notice of his intent to publish only undesignated footage and offered to resolve any specific disputes before publication. Defendants nevertheless objected to the release of *any* deposition video—regardless of designation—citing generalized concerns about harassment, privacy, and jury taint. This position collapses the clear distinction in the PO between protected "Confidential" content and undesignated testimony, effectively imposing an extra-contractual blanket ban on publication.

Plaintiff seeks a clear ruling that the PO applies only to deposition video segments containing material properly designated "Confidential" and that undesignated excerpts are not restricted. Plaintiff further requests confirmation that he may publish such undesignated excerpts after providing reasonable advance notice to allow Defendants to articulate particularized confidentiality objections. This clarification is needed to prevent overbroad, categorical objections that chill Plaintiff's lawful use of public, undesignated testimony.

2. *Other Materials Created or Obtained Outside of Discovery.* Plaintiff submits that any and all materials he created or obtained entirely outside the discovery process are not subject to the PO, regardless of whether they address issues, events, or individuals involved in this litigation. Plaintiff seeks an explicit clarification that such materials remain outside the scope of the PO.

In *Seattle Times Co. v. Rhinehart*, the Supreme Court held that a PO "[did] not offend the First Amendment" precisely because it "[was] limited to the context of pretrial civil discovery,

18

and [did]not restrict the dissemination of the information if gained from other sources." 467 U.S., at 37. Where, as here, a PO is extended to apply to materials Plaintiff himself created or obtained independent of discovery, heightened scrutiny is warranted to ensure the protection of his First Amendment rights.

3. *Redactions beyond the Scope of the PO.* The PO does not authorize Defendants to withhold from Plaintiff any material relevant to his claims. Under the PO, the mechanism to protect sensitive information pertinent to Plaintiff's claims is not redaction, which prevents Plaintiff himself from accessing them, but the designation "Confidential," which allows Plaintiff to view them while obligating him to maintain their confidentiality. To this extent, the PO governs dissemination, not access. Defendants' counsel themselves acknowledged in a June 21, 2024 email, "To be clear, the protective order will not prevent you from obtaining or viewing any documents, but will only restrict the public dissemination of documents marked confidential." Ex. A, at 7. Redactions that block Plaintiff from viewing material relevant to his claims, including claims presently dismissed but preserved for appeal, exceed the PO's scope. Such concealment frustrates discovery, creates inefficiencies, and prejudices Plaintiff's ability to prosecute reinstated claims. Plaintiff requests that the Court order removal of such redactions, subject only to the PO's actual dissemination limits.

To clarify the PO's limits in this regard, Plaintiff asks the Court to make explicit that:

- Documents may not be redacted as to strip them of discoverable content;

- Documents appropriately redacted may not be designated "Confidential" without individualized justification;

- Redactions must be supported by a valid claim of privilege or privacy interest, not invoked to obscure inconvenient facts or shield institutional misconduct; and

- FERPA obligations do not extend to information already anonymized, public, or incapable of identifying individual students, particularly when viewed in isolation.

Rule 26(c) requires a *particularized showing* of prejudice or harm, not just boilerplate FERPA references. FERPA, in turn, does not require withholding anonymized, non-identifiable, or already-public information, especially when viewed in isolation. Defendants' blanket FERPA claims ignore these limitations. When content is already rendered inaccessible through redaction, adding a "Confidential" designation is redundant and unjustified, granting Defendants unreviewable control over the record and obstructing Plaintiff's meaningful use of evidence. The PO cannot be used to shield reputational embarrassment or obscure institutional misconduct. Plaintiff warned of this misuse in June 2024, objecting to any attempt to invoke a PO "to shield Defendants from public scrutiny, avoid embarrassment, suppress negative publicity, or prevent accountability for wrongful actions" and protections that "serve no legitimate purpose other than to protect the Defendants' interests at the expense of transparency and justice." Ex. A, at 2. Plaintiff requests that the Court direct Defendants to remove all such improper redactions, subject only to the PO's actual dissemination limits.

4. *Privilege Protocols and OGC Communications.* The JS's reference to privilege protocols does not extend to communications with the Office of General Counsel ("OGC") during the period in which the events underlying this lawsuit occurred, where the OGC acted in an administrative rather than legal capacity. Where OGC was engaged in policy implementation, personnel management, or other non-legal functions, its communications are not privileged and must be produced. The JS cannot reasonably be read to foreclose Plaintiff's right to challenge such assertions. Plaintiff therefore requests confirmation that the JS does not bar these challenges and that Defendants must disclose non-legal OGC communications from the relevant period.

Because the Court has previously declined to compel Defendants to produce a privilege log and discovery has formally closed, Plaintiff does not seek present relief. He preserves this objection for appeal, emphasizing that nothing in the JS supersedes the requirements of Rule 26(b)(5).

5. Require Defendants to articulate, for each redaction or "Confidential" designation, a particularized basis identifying the specific privacy interest, privilege, or statutory protection claimed. Defendants must also explain why less-restrictive alternatives—such as anonymization or redaction of only discrete identifiers—would be insufficient to protect that interest.

**B.    Requests for Modification**.

1. In the alternative, if the Court determines that the PO cannot reasonably be construed as Plaintiff requests in Section V(A), Plaintiff respectfully asks that it be modified to reflect those limitations expressly. Such modification would ensure the Order conforms to Rule 26(c), avoids undue restriction of constitutional rights, and aligns with the purposes originally represented by Defendants.

2. In June 2024, Plaintiff suggested to Defendants' counsel that the PO be revised to allow other courts to view and apply it according to their own standards. In response, Ms. Berman stated that "it is standard that the Judge who enters the Protective Order retains jurisdiction over it," and that "Judges normally do not permit other trial courts to review their Orders." Ex. A, at 8. While a court may retain jurisdiction over its own orders, Plaintiff has since learned that this representation was incomplete and misleading: Other courts retain parallel authority to determine whether and how a protective order should apply in their own proceedings. Plaintiff's proposed language would have accurately reflected that principle.

Accordingly, Plaintiff requests that the Court modify the PO to state expressly that: (1) Any court in which relevant documents are later filed may independently determine whether

those materials should be sealed, redacted, or made public; and (2) Nothing in Paragraph 6(a) limits another court's authority to unseal, de-designate, or otherwise adjudicate confidentiality issues under its own legal standards.

## C.    Request for Rescission

If the Court finds that the PO was entered under duress or undue influence, lacked mutual assent on material terms, or rested on a material mistake, rescission is warranted. In that event, Plaintiff respectfully elects rescission and asks the Court to declare the agreement void, as the assent necessary to sustain it either never formed or was vitiated.

The practical effect should be to restore the Parties to the baseline: The PO would no longer restrict Plaintiff's use of materials, and any party seeking confidentiality would be required to make a fresh, particularized showing of "good cause" under Rule 26(c). If the Court prefers a narrower remedy, Plaintiff requests rescission at least as to those provisions or designations that stem from defective assent.

## VI. Challenges to "Confidentiality" Designations by Defendants

The PO places the burden on the party asserting confidentiality to justify its designation before the Court, yet it also preserves each party's right to seek judicial review of any designation. See ECF No. 55 ¶ 4 ("All disputes… shall be submitted for ruling to the Court"); *Id.* ¶ 4(b) ("[T]he Party asserting the materials are 'CONFIDENTIAL' shall seek an order from the Court" if the parties cannot resolve the issue in good faith); *Id.* ¶ 8 ("[N]othing… shall shift any burden of proof"). While Defendants bear the formal burden of moving to sustain their designations, Plaintiff brings this motion to resolve existing disputes, secure clarity for future proceedings, and prevent continued restrictions unsupported by the PO's text. This motion thus

seeks an appropriate order under the PO addressing the challenged designations so as to avoid piecemeal disputes and uncertainty going forward.

For purposes of this motion, "removal" or "striking" of a "Confidential" designation on any document or portion thereof means that the material is thereafter free for Plaintiff to use without restriction of any kind, including but not limited to filing in this case or in any other; sharing with third parties; publishing or posting in any forum, online or in print; and quoting, excerpting, or reproducing in any medium, at any time, for any purpose. Unless otherwise specified, all requests in this motion for removal of a confidentiality designation or redaction carry this meaning.

## A.    Admissions Data.

Admissions spreadsheets Defendants have marked "Confidential" contain anonymized historical data—LSAT scores, GPAs, index scores, and scholarship offers for the 2020 and other entering classes. They contain no names, identifiers, or individualized records, and their disclosure would not harm any student's privacy or the University's legitimate interests. Defendants' "Confidentiality" designations of such data exceed the scope of the PO.

1. *No PII or FERPA-Protected Records.* The spreadsheets contain no names, student IDs, addresses, emails, phone numbers, or other unique identifiers—or, if any such information exists, can easily be redacted—so that no individual can reasonably be identified, directly or indirectly. The information is not plausibly PII under FERPA and is not an "education record" within the meaning of the PO's privacy provisions.

2. *Not "Commercial, Financial, Business, or Proprietary."* The PO protects sensitive institutional information that, if disclosed, could harm competitive or operational interests. The admissions data spreadsheets contain no trade secrets, strategic business planning, confidential

23

financial data, or other proprietary information. Peer institutions routinely publish comparable admissions data in aggregate form (e.g., medians, 25th–75th percentiles), and Howard has no legitimate competitive interest in concealing anonymized, years-old metrics.

3. *Compelling Public Interest.* The data is directly relevant to Plaintiff's claims of racial discrimination, disparate treatment, and inequitable scholarship allocation. Shielding it from public view risks undermining accountability and transparency in civil rights litigation. Courts recognize a strong presumption of public access to judicial records, especially where evidence may reveal systemic discrimination.

4. *Outside the PO's Purpose.* The PO's recitals limit its reach to FERPA-protected student records, PII, and genuinely confidential commercial or proprietary information. The spreadsheets fit none of those categories and are not sensitive within the meaning of Rule 26(c), which requires a particularized showing of harm—such as undue burden, oppression, or disclosure of trade secrets—not mere reputational discomfort. As Plaintiff explained in early correspondence:

> I will not support the designation of information as confidential when the primary motivation is to shield Defendants from public scrutiny, avoid embarrassment, suppress negative publicity, or prevent accountability for wrongful actions. Such self-serving motivations serve no legitimate purpose other than to protect the Defendants' interests at the expense of transparency and justice.

> Confidentiality should be reserved for genuinely sensitive information, and any attempts to misuse confidentiality designations to conceal misconduct, negligence, or other wrongful actions will be challenged vigorously. Ex. A, at 2.

Defendants replied,

> [T]he ability to mark certain sensitive business or financial information as confidential is a common feature of protective orders, and there may be confidential business information or information relating to University policies or personnel which should not be made public. Your fear appears to be that the terms in the order may "lend themselves to abuse," but you will be able to challenge any confidentiality designations you disagree with. To be clear, the protective order will not prevent you from obtaining or viewing any

documents, but will only restrict the public dissemination of documents marked confidential. *Id.*, at 7.

The present disputes represent the kind of abuse Plaintiff has rejected from the outset.

5. *Publicly Funded Institution.* Howard University has long relied on substantial taxpayer funding, including federal subsidies, grants, and contracts. This public support reinforces the public interest in allowing scrutiny of its institutional practices, particularly where they are central to the claims in this case. While such reliance does not transform Howard into a public institution, it weighs heavily against shielding core institutional data from judicial and public examination.

6. *Relief Requested.* Plaintiff respectfully moves for an order removing the confidentiality designation from the admissions data, or, in the alternative, for permission to publicly disclose the data subject to reasonable redaction. The University has not identified any specific basis for its designation beyond a generic reference to "sensitive business information." No student names, contact information, or personally identifiable data appear in the spreadsheets, and the University has not asserted any proprietary model, trade secret, or confidential method embedded in them.

Under Paragraph 6 of the PO, the Court retains full authority to modify or lift a confidentiality designation upon a showing of good cause:

> "Nothing in this Order shall prevent a party from filing a motion seeking further or different protection from the Court under Rule 26(c) of the Federal Rules of Civil Procedure, or from filing a motion with respect to the manner in which confidential documents shall be treated." ECF No. 55 ¶ 6.

Rule 26(c) requires a showing of good cause to justify confidentiality. See *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). Courts disfavor protective orders that shield discovery materials from public view absent a showing of concrete harm.

**B.  The "Demand Letter."**

Defendants have designated as "Confidential" and redacted portions of a multi-page "Demand Letter" authored and circulated by Howard Law students in January 2021. The document's own header and distribution list make clear that it was emailed to the Classes of 2021, 2022, and 2023, a listserv encompassing the entire faculty and staff, and multiple administrators—essentially, the entire Howard Law community with the sole exception of Plaintiff. In other words, it was deliberately broadcast to hundreds of recipients, including individuals wholly unconnected to any putative "privacy interest."

Under the Protective Order, confidentiality is not warranted for information publicly known for years to the entire law school community except Plaintiff. No legitimate basis exists to shield it from public view in this litigation. Defendants' designation appears calculated not to protect privacy but to suppress public scrutiny of the letter's contents and the administration's role in soliciting or responding to it.

The redactions, presumably of student names, are equally improper. Those names were voluntarily published by the students themselves to a mass audience within the school, thereby waiving any privacy expectation. Moreover, FERPA does not apply where students have voluntarily publicized their own identities in connection with the communication, and further, FERPA is a non-disclosure funding statute, not a broad evidentiary privilege. FERPA cannot justify sealing otherwise relevant, non-academic communications. Plaintiff therefore requests that the Court (a) strike the "Confidential" designation from the Demand Letter, and (b) order Defendants to produce an unredacted version in which all student names are restored.

**C.  The EEO Report.**

The EEO Report (HOW_00004416 *et seq.*) produced by Defendants is stamped "Confidential" on every page yet contains no information qualifying for protection under the PO. The Report appears unredacted and contains no sensitive personal identifiers, proprietary business information, or other content that could reasonably be construed as warranting confidentiality. Its subject matter concerns institutional EEO data and policy implementation— not individualized personnel records or private student information.

Labeling the entire Report "Confidential" without any specific basis undermines the PO's core requirement that confidentiality be asserted in "good faith" and only as to "information not publicly known and not generally available to the public." Here, the overbroad designation serves only to impede public access to evidence relevant to Plaintiff's claims, particularly those involving systemic discrimination and institutional practices.

Defendants have not, and cannot, articulate how disclosure of this document would cause "annoyance, embarrassment, oppression, or undue burden or expense" as contemplated by Rule 26(c). The Court should therefore strike the "Confidential" designation in its entirety and expressly authorize Plaintiff to use, share, and publish the EEO Report—including posting it online or providing it to third parties—without restriction of any kind, whether during or after the conclusion of this litigation.

**D.  Miscellaneous Productions.**

Defendants designated copious numbers of production documents "Confidential," or redacted them heavily, or both despite no legitimate confidentiality interest. In the vast majority of cases, these were student names and email addresses attached to communications in which those same students sought administrative action to be taken against Plaintiff.

Among these, Plaintiff identifies the following: Bates numbers HOW_00000066, HOW_00000086, HOW_00000092, HOW_00000094, HOW_00000097, HOW_00000125, HOW_00000190, HOW_00000199, HOW_00000533, HOW_00000595, HOW_00000651, HOW_00000653, HOW_00000655, HOW_00000664, HOW_00000667, HOW_00000672, HOW_00000676, HOW_00000797, HOW_00001020, HOW_00001028, HOW_00001074, HOW_00001123, HOW_00001146, HOW_00001150, HOW_00001151, HOW_00001155, HOW_00001225, HOW_00001891, HOW_00001893, HOW_00001896, HOW_00001901, HOW_00001966, HOW_00002060, HOW_00002389, HOW_00003039, HOW_00003061, HOW_00003065, HOW_00003115, HOW_00003121, HOW_00003174, HOW_00003200, HOW_00003201, HOW_00003203, HOW_00003206, HOW_00003251, HOW_00003355, HOW_00003411, and HOW_00003413).

Redacting these documents or stamping them "Confidential" is inconsistent with the PO when such redactions concealed nothing more than names of students who voluntarily contacted administrators to report Plaintiff, request disciplinary action, or otherwise coordinate with the administration against him. These were not passive bystanders whose privacy outweighs the public's right to know but were active participants in events at the heart of this litigation, serving in effect as witnesses or complainants. Their identities are relevant to Plaintiff's claims and defenses, and the PO was never intended to shield core evidence from disclosure.

## VII. Conclusion

Plaintiff respectfully asks the Court to either clarify the PO and JS in line with the parties' original understanding and the reasonable reading of their language or else modify them so as to ensure they do not overreach their lawful function.

**<u>Certification</u>**

Plaintiff certifies that, pursuant to Local Rules, he conferred in good faith with

Defendants regarding the matters in this motion, as documented in Exhibit C, but the parties

were unable to reach agreement. Defendants expressed willingness to consider modification of

the Protective Order only if Plaintiff provided a redline of proposed changes; Plaintiff explained

that he seeks clarification of the existing order rather than wholesale revision, and declined to

submit a redline. Defendants then declined to confer further.


Dated: August 15, 2025

Respectfully submitted,


Michael R. Newman
Plaintiff *Pro Se*
thayray@gmail.com
(808) 796-4708