# Exhibit C

## Emails with Counsel Conferring on Present Motion

 **Gmail**

**Thay Ray <thayray@gmail.com>**

## Conferring on procedural matters and case-related materials.
24 messages

---

**thayray@gmail.com** <thayray@gmail.com>                    Tue, Jun 3, 2025 at 10:47 AM
To: "Berman, Amanda" <ABerman@crowell.com>
Cc: "Berry, Crinesha" <CBerry@crowell.com>, "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>

Dear Ms. Berman,

Following up from last week's hearing, I would like to begin discussion with Defendants by asking whether you would be willing to split costs 50/50 for court-provided hearing transcripts. I have a copy of the October 4, 2024, transcript, though I presume you already have your own. I have not yet obtained last week's transcript, and if you've already ordered a copy, I'd be happy to reimburse half the cost to obtain a copy.

This proposal applies only to court-provided hearing transcripts and does not extend to deposition transcripts or other materials at this time. I'll be following up on these and other matters, including issues related to the Protective Order and Joint Statement, as the Court suggested.

Sincerely,
Michael Newman
(808) 796-4708

 Virus-free.www.avast.com

---

**thayray@gmail.com** <thayray@gmail.com>                    Wed, Jun 4, 2025 at 12:40 PM
To: "Berman, Amanda" <ABerman@crowell.com>
Cc: "Berry, Crinesha" <CBerry@crowell.com>, "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>

Dear Ms. Berman,

I'd also like to open discussion regarding the scope of the Protective Order, particularly as it applies to documents that were in my possession prior to their designation as "Confidential" in discovery. While Judge McFadden expressed his view on this issue in the Court's January 22, 2025, order, that ruling was made without our having fully briefed the matter through motions process. My position continues to be that extending the P.O. to materials independently obtained before litigation even began is overbroad and inconsistent with the Order's entire purpose. I assume your position on this issue has not changed and wonder if some sort of correspondence or meet-and-confer could narrow our differences and/or prepare for a motion for clarification or something similar.

Sincerely,
MRN

 Virus-free.www.avast.com

[Quoted text hidden]

---

**Berry, Crinesha** <CBerry@crowell.com>                    Wed, Jun 4, 2025 at 7:52 PM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Good afternoon, Mr. Newman:

We are open to considering modest changes to the Protective Order consistent with the issues you raised at the hearing regarding documents that were in your possession before the litigation. We've attached the latest word document, which we circulated to you on June 21, 2024. Please provide the speciic changes you propose in redline so we may review and share with our client.

Also, we are unaware of any transcript of the May 27 hearing being available and do not intend to order one.

Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 4, 2025 12:40 PM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berry, Crinesha <CBerry@crowell.com>; Berns-Zieve, Eli <EBerns-Zieve@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

2

[Quoted text hidden]

📄 **DRAFT Protective Order.docx**
51K

---

**thayray@gmail.com** <thayray@gmail.com>                    Sat, Jun 7, 2025 at 10:20 AM
To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the

confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent

annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN

---

⬜ Virus-free.www.avast.com

[Quoted text hidden]

---

**thayray@gmail.com** <thayray@gmail.com>                    Sat, Jun 7, 2025 at 12:58 PM
To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

3

[Quoted text hidden]

---

**Berry, Crinesha** <CBerry@crowell.com>     <mark>Mon, Jun 9, 2025 at 8:45 PM</mark> To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Mr. Newman:


We will consider any speciic changes you propose to address the conidentiality issue you raised with the court, particularly in regard to the handling of documents in your possession prior to discovery as we move to summary judgment brief. Please send us a redline of the Protective Order with your proposed changes, and we will discuss any further edits or objections as appropriate at that time.


Best,

Crinesha



**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 7, 2025 10:20 AM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

---------------------------------------

------

---

**Exercise caution with links and attachments**

4

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN

Virus-free.www.avast.com

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

---

Virus-free.www.avast.com

On Tue, Jun 3, 2025 at 1047 AM <thayray@gmail.com> wrote:

Dear Ms. Berman,

Following up from last week's hearing, I would like to begin discussion with Defendants by asking whether you would be willing to split costs 50/50 for court-provided hearing transcripts. I have a copy of the October 4, 24, transcript, though I presume you already have your own. I have not yet obtained last week's transcript, and if you've already ordered a copy, I'd be happy to reimburse half the cost to obtain a copy.

This proposal applies only to court-provided hearing transcripts and does not extend to deposition transcripts or other materials at this time. I'll be following up on these and other matters, including issues related to the Protective Order and Joint Statement, as the Court suggested.

Sincerely,

Michael Newman

(808) 796-4708

---

Virus-free.www.avast.com

---

**Berry, Crinesha**<CBerry@crowell.com>                                    Tue, Jun 10, 2025 at 9:34 AM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Mr. Newman:


As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.


Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

‒‒

---

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

‒‒

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decisionmaking, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

7

On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently —including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN

Virus-free.www.avast.com

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

---

Virus-free.www.avast.com

On Tue, Jun 3, 2025 at 1047 AM <thayray@gmail.com> wrote:

Dear Ms. Berman,

Following up from last week's hearing, I would like to begin discussion with Defendants by asking whether you would be willing to split costs 50/50 for court-provided hearing transcripts. I have a copy of the October 4, 2024, transcript, though I presume you already have your own. I have not yet obtained last week's transcript, and if you've already ordered a copy, I'd be happy to reimburse half the cost to obtain a copy.

This proposal applies only to court-provided hearing transcripts and does not extend to deposition transcripts or other materials at this time. I'll be following up on these and other matters, including issues related to the Protective Order and Joint Statement, as the Court suggested.

Sincerely,

Michael Newman

(808) 796-4708

---

Virus-free.www.avast.com

---

**thayray@gmail.com** <thayray@gmail.com>    Wed, Jun 11, 2025 at 3:43 PM
To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your March

18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN

---

 Virus-free.www.avast.com

[Quoted text hidden]

---

**Berry, Crinesha** <CBerry@crowell.com>                                    Mon, Jun 16, 2025 at 9:39 AM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Mr. Newman:


We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to ile audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).


We are not aware of any case or rule that would permit a party to rely on self-prepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deiciency" before enforcing the Rules' certiication and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.


Separately, we want to clarify that we are not imposing any undue burden or costs onto you. While we recognize the inancial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's inancial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clariies our position. We do not have anything more to add on this point.

[Quoted text hidden]

---

**thayray@gmail.com** <thayray@gmail.com>                                    Tue, Jun 17, 2025 at 5:11 PM
To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

The following text included in the P.O. will help, but it does not fully address all of my present concerns:

"Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."

I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct —should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.

Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AI-generated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN
[Quoted text hidden]

---

**thayray@gmail.com** <thayray@gmail.com>                                    Sat, Jun 21, 2025 at 11:20 AM
To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.

I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.

MRN

[Quoted text hidden]

---

**Berman, Amanda** <ABerman@crowell.com>                              Sat, Jun 21, 2025 at 12:02 PM
To: "thayray@gmail.com" <thayray@gmail.com>, "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>

Mr. Newman -

Your recent email raised a number of different issues that we are discussing internally and with
our client. We will get back to you when we are able to, likely next week. Best,

Amanda Berman

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 21, 2025 11:20:58 AM
[Quoted text hidden]

[Quoted text hidden]

---

**Berry, Crinesha** <CBerry@crowell.com>                              Tue, Jun 24, 2025 at 6:48 PM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Mr. Newman,

We respond to the points raised regarding the protective order, joint statement, and related discovery
matters below.

**Protective   Order**

We are open to adding language along the lines of your proposed addition, although we may need to adjust
that language to make clear that the University, for its part, remains bound by FERPA to keep student
information conidential. But we cannot agree to any revised language in a vacuum. You state the proposed
edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to
know what and where they are so we can assess all proposed changes together, consider how they change
the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As
previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline
markup—which would be the easiest way to proceed and which the court will need if you intend to move for
revision of the PO—please identify the page number and section of the PO that you are proposing to revise.
We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide
any changes for our consideration as you are the party seeking a modiication to the PO. At current there is
nothing for us to consider given that you have not provided your actual proposed revisions in redline.

**Joint Statement    and    Privilege    Log**

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.

Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a year-and-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.

**Redacted    Documents**

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily redacted documents" in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

**Video    Depositions on    Personal    Device**

The judge explained in his May 15 opinion that your reliance on video footage of depositions created using a personal device is inappropriate and prohibited by the federal rules. *See*    May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See*    Opp'n Mot. File, ECF No. 93, at 2, 4. ***The    federalrules    do    not    permit courts to    rely    on    deposition    transcripts    or recordings created    by    parties.*** See Fed. R. Civ. P. 28(c), 30(f); *see    also    Alcorn v.    City    of    Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020).")."). As you know, we raised this issue again at the recent status conference, and the court noted that it would be up to you to conform your summary judgment ilings to the rules. As we indicated then, our client remains willing to share certiied deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

**Public    Disclosure    of    Depositions    and    Recordings**

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under conidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as conidential. We are

not open to modifying the PO in a way that would allow you to publicly share conidential information provided by the University in discovery or deposition testimony designated Conidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can ile information designated as conidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as conidential and we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct conidentiality markings. We also produced documents in corresponding image iles (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel iles were designated as conidential. This information, which is sensitive business information kept conidential by the University, should be used only for purposes of this suit, and in accordance with its conidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

## Self-Created Transcripts and Use of AI

This is the irst time we have been made aware that the self-created transcripts you referenced were AIgenerated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts—concerns that are only heightened by the use of unidentiied AI tools. Indeed, we objected to your use of AI when you identiied its use when your deposition was being taken, which is the only time you contemporaneously identiied that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.

We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

## Use of Audio/Transcripts

Our position regarding transcripts remains consistent with what we've stated above.

Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 21, 2025 11:21 AM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.

I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.

MRN

On Tue, Jun 17, 2025, 4:11 PM <thayray@gmail.com> wrote:

> The following text included in the P.O. will help, but it does not fully address all of my present concerns:
>
> "Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."
>
> I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.
>
> Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.
>
> I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the

like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AI-generated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN

On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to ile audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).

We are not aware of any case or rule that would permit a party to rely on self-prepared transcripts— particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deiciency" before enforcing the Rules' certiication and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.

Separately, we want to clarify that we are not imposing any undue burden or costs onto you. While we recognize the  inancial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's  inancial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clari ies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at

liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN

---

Virus-free.www.avast.com

On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

> Mr. Newman:
>
> As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.
>
> Best,
>
> Crinesha
>
> **Crinesha B. Berry**
>
> Crowell & Moring LLP
>
> cberry@crowell.com
>
> +1.202.688.3435 direct  |  +1.757.593.4107 mobile

---

**From:** thayray@gmail.com <thayray@gmail.com>

18

**Sent:** Saturday, June 7, 2025 12:59 PM

**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its

original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.


MRN

_____

Virus-free.www.avast.com


On Wed, Jun 4, 2025 at 7:55 PM Berry, Crinesha <CBerry@crowell.com> wrote:

> Good afternoon, Mr. Newman:
>
>
> We are open to considering modest changes to the Protective Order consistent with the issues you raised at the hearing regarding documents that were in your possession before the litigation.  We've attached the latest word document, which we circulated to you on June 21, 2024. Please provide the specific changes you propose in redline so we may review and share with our client.
>
>
> Also, we are unaware of any transcript of the May 27 hearing being available and do not intend to order one.
>
>
> Best,
>
> Crinesha
>
>
>
> **Crinesha B. Berry**
>
> Crowell & Moring LLP
>
> cberry@crowell.com
>
> +1.202.688.3435 direct | +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 4, 2025 12:40 PM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berry, Crinesha <CBerry@crowell.com>; Berns-Zieve, Eli <EBerns-Zieve@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

---------------------------------------

----

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

----

Dear Ms. Berman,

I'd also like to open discussion regarding the scope of the Protective Order, particularly as it applies to documents that were in my possession prior to their designation as "Confidential" in discovery. While Judge McFadden expressed his view on this issue in the Court's January 22, 2025, order, that ruling was made without our having fully briefed the matter through motions process. My position continues to be that extending the P.O. to materials independently obtained before litigation even began is overbroad and inconsistent with the Order's entire purpose. I assume your position on this issue has not changed and wonder if some sort of correspondence or meet-and-confer could narrow our differences and/or prepare for a motion for clarification or something similar.

Sincerely,

MRN

---

Virus-free.www.avast.com

On Tue, Jun 3, 2025 at 10:47 AM <thayray@gmail.com> wrote:

Dear Ms. Berman,

Following up from last week's hearing, I would like to begin discussion with Defendants by asking whether you would be willing to split costs 50/50 for court-provided hearing transcripts. I have a copy of the October 4, 2024, transcript, though I presume you already have your own. I have not yet obtained last week's transcript, and if you've already ordered a copy, I'd be happy to reimburse half the cost to obtain a copy.

This proposal applies only to court-provided hearing transcripts and does not extend to deposition

transcripts or other materials at this time. I'll be following up on these and other matters, including issues related to the Protective Order and Joint Statement, as the Court suggested.

Sincerely,

Michael Newman

(808) 796-4708

Virus-free.www.avast.com

---

**3 attachments**

**HOW_00005400.tif**
3K

**HOW_00005400.tif**
3K

**HOW_00005396.tif**
3K

To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com> Dear Counsel,

I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.

Best wishes,
MRN
[Quoted text hidden]

---

**thayray@gmail.com** <thayray@gmail.com>                                    Fri, Jul 11, 2025 at 3:07 PM
To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its provisions as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreedupon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows.

Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."* To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, line-by-line editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-by-line editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist

on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.

You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?

In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and self-transcribed depositions. However, this was a brief, passing observation rather than a ruling made after devoted motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreed-upon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is clear, identical, and available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman
(808) 796-4708
[Quoted text hidden]

---

**thayray@gmail.com** <thayray@gmail.com>                                        Mon, Jul 14, 2025 at 3:58 PM
To: "Berry, Crinesha" <CBerry@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berman, Amanda" <ABerman@crowell.com>

Dear Counsel,

I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my self-prepared deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgment briefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the official audiorecordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcripts against the official audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restricts such use in summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion to enable the Court to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

Thank you for your timely attention.

Regards,
Michael R. Newman
(808) 796-4708

Virus-free.www.avast.com

[Quoted text hidden]

---

**Berman, Amanda** <ABerman@crowell.com>                    Wed, Jul 16, 2025 at 6:50 PM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berry, Crinesha" <CBerry@crowell.com>

Mr. Newman –

I'm sure you will understand that, with our summary judgment brief due date now under two weeks away, we can't spend substantial time going back and forth on these issues. I also think most of your questions below have previously been answered.

To put our position succinctly, the FRCP requires the use of certified transcripts—and there is good reason for that. From our perspective, a key point is that it imposes a very substantial burden on our client, in terms of time and costs, to suggest that Defendants should have to verify your self-made transcripts against the audio and identify any discrepancies. In terms of specific objections, we previously noted that in transcripts you submitted in support of your motion for leave to amend, you added punctuation and characterizations of witnesses' demeanor or tone, which is not appropriate or something a court reporter would do. But again, we cannot take on the burden of reviewing your transcripts line-by-line to identify those and other issues and discrepancies. That is precisely why the rules require use of third-party certified transcripts. I'm not sure how a notary could fulfill that same function or ensure the accuracy of the transcripts in the same way as a court reporter.  We made what we thought was a very reasonable offer, which was that if you would share the costs of the certified transcripts with our client, we could share those with you so that all parties can use them in briefing. I understand from below that you are not willing to do so.

In regard to your planned motion, it is not clear to me precisely what relief you intend to ask the Court for. Please clarify that so I can ascertain my client's position on the motion. We would strongly oppose any request for

27

<mark>expedited briefing. As noted, we are coming up on the deadline for our own summary judgment brief and so need to focus our efforts over the next two weeks on that.</mark>

Best,

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP
aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Monday, July 14, 2025 3:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my self-prepared deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgment briefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the official audiorecordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcripts against theofficial audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restricts such usein summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion to enable theCourt to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

Thank you for your timely attention.

Regards,
Michael R. Newman
(808) 796-4708

Virus-free.www.avast.com

On Fri, Jul 11, 2025 at 3:07 PM <thayray@gmail.com> wrote:

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its provisions as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreed-upon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows.

Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."* To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, line-by-line editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-by-line editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.

You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check that against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?

In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and self-transcribed depositions. However, this was a brief, passing observation rather than a ruling made after motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreed-upon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is

clear, identical, and available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman
(808) 796-4708


On Sun, Jun 29, 2025 at 11:12 AM <thayray@gmail.com> wrote:

Dear Counsel,


I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.


Best wishes,

MRN


On Tue, Jun 24, 2025, 5:48 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman,


We respond to the points raised regarding the protective order, joint statement, and related discovery matters below.

**Protective    Order**

We are open to adding language along the lines of your proposed addition, although we may need to adjust

that language to make clear that the University, for its part, remains bound by FERPA to keep student information conidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modiication to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.

**Joint        Statement    and    Privilege      Log**

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.

Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a year-and-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.

**Redacted   Documents**

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily" redacted documents in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

**Video Depositions on Personal Device**

The judge explained in his May 15 opinion that your reliance on video footage of depositions created using



a personal device is inappropriate and prohibited by the federal rules. *See* May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See*    Opp'n Mot. File, ECF No. 93, at 2, 4. ***The    federal rules    do    not    permit courts to    rely on    deposition    transcripts    or    recordings    created    by    parties.*** See Fed. R. Civ. P. 28(c), 30(f); *see    also Alcorn    v.    City    of    Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020).").").
As you know, we raised this issue again at the recent status conference, and the court noted that it would be up to you to conform your summary judgment ilings to the rules. As we indicated then, our client remains willing to share certiied deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

## Public    Disclosure    of    Depositions    and    Recordings

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under conidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as conidential. We are not open to modifying the PO in a way that would allow you to publicly share conidential information provided by the University in discovery or deposition testimony designated Conidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can ile information designated as conidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as conidential and we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct conidentiality markings. We also produced documents in corresponding image iles (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel iles were designated as conidential. This information, which is sensitive business information kept conidential by the University, should be used only for purposes of this suit, and in accordance with its conidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

## Self-Created    Transcripts    and    Use    of    AI

This is the irst time we have been made aware that the self-created transcripts you referenced were AI-generated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts—concerns that are only heightened by the use of unidentiied AI tools. Indeed, we objected to your use of AI when you identiied its use when your deposition was being taken, which is the only time you contemporaneously identiied that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.

We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

**Use of Audio/Transcripts**

Our position regarding transcripts remains consistent with what we've stated above.


Best,

Crinesha



**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile


---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 21, 2025 11:21 AM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.


I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.


I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.


MRN


On Tue, Jun 17, 2025, 4:11PM <thayray@gmail.com> wrote:

> The following text included in the P.O. will help, but it does not fully address all of my present concerns:
>
> "Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."
>
> I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the

39

confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—

most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.

Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AI-generated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I

assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN

On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to ile audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).

We are not aware of any case or rule that would permit a party to rely on self-prepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deiciency" before enforcing the Rules' certiication and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.

Separately, we want to clarify that we are not imposing any undue burden or costs onto you. While we recognize the inancial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's inancial status or resources. You

chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what

has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clariies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com> **Subject:** Re: Conferring on procedural maers and case-related materials.

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN

Virus-free.www.avast.com

On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.

Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN


On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of selfcreated transcripts in briefing and motions practice, as noted during the May 27 hearing.


MRN

47

Virus-free.www.avast.com

On Wed, Jun 4, 2025 at 7:55 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Good afternoon, Mr. Newman:

We are open to considering modest changes to the Protective Order consistent with the issues you raised at the hearing regarding documents that were in your possession before the litigation. We've attached the latest word document, which we circulated to you on June 21, 2024. Please provide the specific changes you propose in redline so we may review and share with our client.

Also, we are unaware of any transcript of the May 27 hearing being available and do not intend to order one.

Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct

---

**thayray@gmail.com** <thayray@gmail.com>                          Fri, Jul 18, 2025 at 10:59 AM
To: "Berman, Amanda" <ABerman@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berry, Crinesha" <CBerry@crowell.com>

Dear Counsel,

I am writing to follow up on our ongoing disputes regarding the scope and application of the Protective Order.

Your recent email indicated that Defendants do not wish to engage in further negotiation on these issues. While I respect that position, I also take it to mean that Defendants are now declining to raise any additional objections, clarifications, or stipulations beyond those already expressed. I recognize your current briefing schedule is consuming much of your time, but unless I hear otherwise, I will assume that any new arguments raised after this point are waived or untimely.

As I've previously stated, I intend to publish certain deposition excerpts and related materials in the near future. I will provide Defendants ample opportunity to review these materials in advance, consistent with the current Protective Order, Fed. R. Civ. P. 26(c), and the spirit of Local Rule 5.1(h). I remain open to reasonable, good-faith accommodations that preserve the rights of all parties while protecting the integrity of the record.

If Defendants' position has changed or if you wish to reengage on these issues, I'm happy to resume discussions. Otherwise, I plan to proceed accordingly.


Sincerely,
Michael
Newman
[Quoted text hidden]

---

**Berman, Amanda** <ABerman@crowell.com>                                    Fri, Jul 18, 2025 at 5:56 PM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berry, Crinesha" <CBerry@crowell.com>


Mr. Newman -


First and most importantly, unless and until the PO is modified by the Court, it remains binding on both parties. We do not and have not agreed to any action by you that would violate it. You suggested adding some language to modify it in one regard; we said we were open to that, but need to know exactly what part of the PO you propose to add that language in, and if you are proposing any other modifications to the PO so we can consider their effect on the whole document together. See the language from our last email below.


***Protective Order***

*We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.*


Second, we have not "waived" objections or arguments or "stipulated" to anything. Again, if you want to modify the PO, we need to know exactly what you propose to change, and then either the parties jointly or you can proceed with a motion to modify. On our end, we see no need to modify or clarify the PO.

Third, when you say you intend to "publish" deposition excerpts and "related materials" in the "near future," what do you mean? Section 5 'Restrictions on Disclosure' of the PO bars the parties from using (including publishing) confidential materials gathered through discovery outside of the context of that litigation. Section 6(b) of the PO also restricts the public filing of testimony or documents marked "Confidential" within the context of the litigation. If, as you are preparing your motion for summary judgment/response, you decide to file or quote materials so designated, you must either move to seal or seek agreement that such materials can be de-designated as Confidential. If you publish materials in a way that violates the PO, we will take all appropriate action to enforce it, and may seek sanctions if appropriate.

As noted above, we remain willing to consider specific changes to the PO, but you need to specify exactly what you propose to change and where.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Friday, July 18, 2025 10:59 AM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

I am writing to follow up on our ongoing disputes regarding the scope and application of the Protective Order.

Your recent email indicated that Defendants do not wish to engage in further negotiation on these issues. While I respect that position, I also take it to mean that Defendants are now declining to raise any additional objections, clarifications, or stipulations beyond those already expressed. I recognize your current briefing schedule is consuming much of your time, but unless I hear otherwise, I will assume that any new arguments raised after this point are waived or untimely.

As I've previously stated, I intend to publish certain deposition excerpts and related materials in the near future. I will provide Defendants ample opportunity to review these materials in advance, consistent with the current Protective Order, Fed. R. Civ. P. 26(c), and the spirit of Local Rule 5.1(h). I remain open to reasonable, good-faith accommodations that preserve the rights of all parties while protecting the integrity of the record.

If Defendants' position has changed or if you wish to reengage on these issues, I'm happy to resume discussions. Otherwise, I plan to proceed accordingly.

Sincerely,

Michael Newman

On Wed, Jul 16, 2025, 6:50 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

I'm sure you will understand that, with our summary judgment brief due date now under two weeks away, we can't spend substantial time going back and forth on these issues. I also think most of your questions below have previously been answered.

To put our position succinctly, the FRCP requires the use of certified transcripts—and there is good reason for that. From our perspective, a key point is that it imposes a very substantial burden on our client, in terms of time and costs, to suggest that Defendants should have to verify your self-made transcripts against the audio and identify any discrepancies. In terms of specific objections, we previously noted that in transcripts you submitted in support of your motion for leave to amend, you added punctuation and characterizations of witnesses' demeanor or tone, which is not appropriate or something a court reporter would do. But again, we cannot take on the burden of reviewing your transcripts line-by-line to identify those and other issues and discrepancies. That is precisely why the rules require use of third-party certified transcripts. I'm not sure how a notary could fulfill that same function or ensure the accuracy of the transcripts in the same way as a court reporter.  We made what we thought was a very reasonable offer, which was that if you would share the costs of the certified transcripts with our client, we could share those with you so that all parties can use them in briefing. I understand from below that you are not willing to do so.

In regard to your planned motion, it is not clear to me precisely what relief you intend to ask the Court for. Please clarify that so I can ascertain my client's position on the motion. We would strongly oppose any request for expedited briefing. As noted, we are coming up on the deadline for our own summary judgment brief and so need to focus our efforts over the next two weeks on that.

Best,

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Monday, July 14, 2025 3:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my self-prepared deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgment briefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the official audiorecordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcripts againstthe official audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restricts suchuse in summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion to enable theCourt to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

Thank you for your timely attention.

Regards,
Michael R. Newman
(808) 796-4708

Virus-free.www.avast.com

On Fri, Jul 11, 2025 at 3:07 PM <thayray@gmail.com> wrote:

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its provisions

as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreed-upon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows.

Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."* To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, line-byline editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-by-line editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.

You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?

In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and selftranscribed depositions. However, this was a brief, passing observation rather than a ruling made after devoted motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreed-upon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is clear, identical, and

available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including

restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman (808)
796-4708


On Sun, Jun 29, 2025 at 11:12 AM <thayray@gmail.com> wrote:

Dear Counsel,


I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.


Best wishes,

MRN


On Tue, Jun 24, 2025, 5:48 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman,


We respond to the points raised regarding the protective order, joint statement, and related discovery matters below.


**Protective Order**

We are open to adding language along the lines of your proposed addition, although we may

need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.

**Joint Statement and Privilege Log**

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.

Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a year-and-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.

**Redacted Documents**

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily" redacted documents in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

**Video Depositions on Personal Device**

The judge explained in his May 15 opinion that your reliance on video footage of depositions created using a personal device is inappropriate and prohibited by the federal rules. *See* May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See* Opp'n Mot. File, ECF No. 93, at 2, 4. ***The federal rules do not permit courts to rely on deposition transcripts or recordings created by parties.*** See Fed. R. Civ. P. 28(c), 30(f); *see also Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D.

Ill. 2020).").") . As you know, we raised this issue again at the recent status conference, and the

court noted that it would be up to you to conform your summary judgment filings to the rules. As we indicated then, our client remains willing to share certified deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

## Public Disclosure of Depositions and Recordings

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under confidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as confidential. We are not open to modifying the PO in a way that would allow you to publicly share confidential information provided by the University in discovery or deposition testimony designated Confidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can file information designated as confidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as confidential and we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct confidentiality markings. We also produced documents in corresponding image files (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel files were designated as confidential. This information, which is sensitive business information kept confidential by the University, should be used only for purposes of this suit, and in accordance with its confidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

## Self-Created Transcripts and Use of AI

This is the first time we have been made aware that the self-created transcripts you referenced were AI-generated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts—concerns that are only heightened by the use of unidentified AI tools. Indeed, we objected to your use of AI when you identified its use when your deposition was being taken, which is the only time you contemporaneously identified that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.

We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has

already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

**Use of Audio/Transcripts**

Our position regarding transcripts remains consistent with what we've stated above.

Best,

Crinesha

**Crinesha B. Berry** Crowell

& Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
   **Sent:** Saturday, June 21, 2025 11:21 AM
   **To:** Berry, Crinesha <CBerry@crowell.com>
   **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>
   **Subject:** Re: Conferring on procedural matters and case-related materials.


I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.


I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.


MRN


On Tue, Jun 17, 2025, 4:11 PM <thayray@gmail.com> wrote:

The following text included in the P.O. will help, but it does not fully address all of my present concerns:

"Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."

I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify



the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.

Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AIgenerated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN

On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to file audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).

We are not aware of any case or rule that would permit a party to rely on self-prepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deficiency" before enforcing the Rules' certification and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.

Separately, we want to clarify that we are not imposing any undue burden or costs onto you.

While we recognize the financial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's financial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clarifies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your



March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN

Virus-free.www.avast.com

On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>

**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda

<ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've

articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN

---

**thayray@gmail.com** <thayray@gmail.com>                                     Fri, Jul 18, 2025 at 9:10 PM
To: "Berman, Amanda" <ABerman@crowell.com>
Cc: "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>, "Berry, Crinesha" <CBerry@crowell.com>

Dear Counsel,

Your suggestion that "there is nothing for [you] to consider" is inaccurate. I have already outlined in prior emails the key issues and interpretive concerns surrounding the Protective Order. Defendants declined to continue those discussions at the time, stating you were not interested in "going back and forth on these issues." It is not my obligation to repackage those points for your convenience after you've chosen to disregard them.

I will proceed with filing a motion asking the Court to clarify that certain interpretations of the PO—interpretations I have already presented and explained—are both reasonable and consistent with its language and purpose. To the extent the Court disagrees, I will request narrowly tailored modifications, not a wholesale revision. Whether Defendants choose to raise new objections at that stage is, of course, their decision, though I may object to any such arguments as untimely.

I will provide a redline if the Court deems one necessary. But I reject Defendants' attempt to impose procedural hurdles while refusing to engage the substance.

You are also welcome to comment on the attached deposition excerpt, which I intend to publish online. If you believe any portion of the content implicates confidentiality under the Protective Order, please inform me within seven days. While I remain open to reasonable concerns, I do not concede that the PO requires prior approval for the use of deposition content not expressly designated "Confidential."

Sincerely,
Michael Newman

On Fri, Jul 18, 2025 at 5:56 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman -

First and most importantly, unless and until the PO is modified by the Court, it remains binding on both parties. We do not and have not agreed to any action by you that would violate it. You suggested adding some language to modify it in one regard; we said we were open to that, but need to know exactly what part of the PO you propose to add that language in, and if you are proposing any other modifications to the PO so we can consider their effect on the whole document together. See the language from our last email below.

### *Protective Order*

*We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.*

Second, we have not "waived" objections or arguments or "stipulated" to anything. Again, if you want to modify the PO, we need to know exactly what you propose to change, and then either the parties jointly or you can proceed with a motion to modify. On our end, we see no need to modify or clarify the PO.

Third, when you say you intend to "publish" deposition excerpts and "related materials" in the "near future," what do you mean? Section 5 'Restrictions on Disclosure' of the PO bars the parties from using (including publishing) confidential materials gathered through discovery outside of the context of that litigation. Section 6(b) of the PO also restricts the public filing of testimony or documents marked "Confidential" within the context of the litigation. If, as you are preparing your motion for summary judgment/response, you decide to file or quote materials so designated, you must either move to seal or seek agreement that such materials can be de-designated as Confidential. If you publish materials in a way that violates the PO, we will take all appropriate action to enforce it, and may seek sanctions if appropriate.

As noted above, we remain willing to consider specific changes to the PO, but you need to specify exactly what you propose to change and where.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

**From:** thayray@gmail.com <thayray@gmail.com>
 **Sent:** Friday, July 18, 2025 10:59 AM
**To:** Berman, Amanda <ABerman@crowell.com>
 **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
 **Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

I am writing to follow up on our ongoing disputes regarding the scope and application of the Protective Order.

Your recent email indicated that Defendants do not wish to engage in further negotiation on these issues. While I respect that position, I also take it to mean that Defendants are now declining to raise any additional objections, clarifications, or stipulations beyond those already expressed. I recognize your current briefing schedule is consuming much of your time, but unless I hear otherwise, I will assume that any new arguments raised after this point are waived or untimely.

As I've previously stated, I intend to publish certain deposition excerpts and related materials in the near future. I will provide Defendants ample opportunity to review these materials in advance, consistent with the current Protective Order, Fed. R. Civ. P. 26(c), and the spirit of Local Rule 5.1(h). I remain open to reasonable, good-faith accommodations that preserve the rights of all parties while protecting the integrity of the record.

If Defendants' position has changed or if you wish to reengage on these issues, I'm happy to resume discussions. Otherwise, I plan to proceed accordingly.

Sincerely,

Michael Newman

On Wed, Jul 16, 2025, 6:50 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

I'm sure you will understand that, with our summary judgment brief due date now under two weeks away, we can't spend substantial time going back and forth on these issues. I also think most of your questions below have previously been answered.

To put our position succinctly, the FRCP requires the use of certified transcripts—and there is good reason for that. From our perspective, a key point is that it imposes a very substantial burden on our client, in terms of time and costs, to suggest that Defendants should have to verify your self-made transcripts against the audio and identify any discrepancies. In terms of specific objections, we previously noted that in transcripts you submitted in support of your motion for leave to amend, you added punctuation and characterizations of witnesses' demeanor or tone, which is not appropriate or something a court reporter would do. But again, we cannot take on the burden of reviewing your transcripts line-by-line to identify those and other issues and discrepancies. That is precisely why the rules require use of third-party certified transcripts. I'm not sure how a notary could fulfill that same function or ensure the accuracy of the transcripts in the same way as a court reporter. We made what we thought was a very reasonable offer, which was that if you would share the costs of the certified transcripts with our client, we could share those with you so that all parties can use them in briefing. I understand from below that you are not willing to do so.

In regard to your planned motion, it is not clear to me precisely what relief you intend to ask the Court for. Please clarify that so I can ascertain my client's position on the motion. We would strongly oppose any request for expedited briefing. As noted, we are coming up on the deadline for our own summary judgment brief and so need to focus our efforts over the next two weeks on that.

Best,

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Monday, July 14, 2025 3:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.

Dear Counsel,

I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my self-prepared deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgment briefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the official audio recordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcripts against the official audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restricts such use in summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion to enable the Court to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

81

Thank you for your timely attention.

Regards,

Michael R. Newman
(808) 796-4708

---

Virus-free.www.avast.com

On Fri, Jul 11, 2025 at 3:07 PM <thayray@gmail.com> wrote:

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its provisions as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreed-upon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows.

Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."* To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, line-

byline editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-by-line editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.

You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?

In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and selftranscribed depositions. However, this was a brief, passing observation rather than a ruling made after devoted motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreed-upon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is clear, identical, and available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman (808) 796-4708

On Sun, Jun 29, 2025 at 11:12 AM <thayray@gmail.com> wrote:

  Dear Counsel,

I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.


Best wishes,

MRN

On Tue, Jun 24, 2025, 5:48 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman,

We respond to the points raised regarding the protective order, joint statement, and related discovery matters below.

**<u>Protective Order</u>**

We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.

**<u>Joint Statement and Privilege Log</u>**

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.

Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a year-and-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.

**Redacted Documents**

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily" redacted documents in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

## Video Depositions on Personal Device

The judge explained in his May 15 opinion that your reliance on video footage of depositions created using a personal device is inappropriate and prohibited by the federal rules. *See* May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See* Opp'n Mot. File, ECF No. 93, at 2, 4. **The federal rules do not permit courts to rely on deposition transcripts or recordings created by parties.** See Fed. R. Civ. P. 28(c), 30(f); *see also Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020).")."). As you know, we raised this issue again at the recent status conference, and the court noted that it would be up to you to conform your summary judgment filings to the rules. As we indicated then, our client remains willing to share certified deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

## Public Disclosure of Depositions and Recordings

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under confidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as confidential. We are not open to modifying the PO in a way that would allow you to publicly share confidential information provided by the University in discovery or deposition testimony designated Confidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can file information designated as confidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as confidential and

we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct confidentiality markings. We also produced documents in corresponding image files (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel files were designated as confidential. This information, which is sensitive business information kept confidential by the University, should be used only for purposes of this suit, and in accordance with its confidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

### Self-Created Transcripts and Use of AI

This is the first time we have been made aware that the self-created transcripts you referenced were AI-generated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts— concerns that are only heightened by the use of unidentified AI tools. Indeed, we objected to your use of AI when you identified its use when your deposition was being taken, which is the only time you contemporaneously identified that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.

We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

### Use of Audio/Transcripts

Our position regarding transcripts remains consistent with what we've stated above.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>

**Sent:** Saturday, June 21, 2025 11:21 AM

**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
  <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.


I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.


I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.


MRN


On Tue, Jun 17, 2025, 4:11 PM <thayray@gmail.com> wrote:

The following text included in the P.O. will help, but it does not fully address all of my present concerns:

"Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."

I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.


Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AIgenerated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN

On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:



Mr. Newman:

We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to file audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).

We are not aware of any case or rule that would permit a party to rely on self-prepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deficiency" before enforcing the Rules' certification and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.

Separately, we want to clarify that we are not imposing any undue burden or costs onto you. While we recognize the financial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's financial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clarifies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry**

Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
   <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.


Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN


Virus-free.www.avast.com


On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:


As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed,

and the court recently declined your request for the disclosure of privileged materials in

response to your motion for sanction.

Best,

Crinesha

**Crinesha B. Berry** Crowell & Moring

LLP cberry@crowell.com

+1.202.688.3435 direct | +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decisionmaking, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorneyclient privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently— including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN

⬜
**001 LANIER Privilege Objections 01.mp4**
12107K

**Berman, Amanda** <ABerman@crowell.com>                    Thu, Jul 24, 2025 at 11:28 AM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berry, Crinesha" <CBerry@crowell.com>, "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>

Mr. Newman –

We strongly object to your planned "publication" of video of the deposition of Ms. Lanier-Smith, or any other deponent, online. Please clarify where exactly you plan to "publish" this excerpt, and what your intent is in doing so.

While we do not claim that the excerpt you provided contains Confidential Information as that term is currently defined in the Protective Order, we can see no possible reason for "publishing" it online except to harass Ms. Lanier-Smith and invade her privacy. And publishing deposition video—which as you know was not the agreed method of recording— could taint the jury pool were this matter to survive summary judgment and go to trial. For these reasons among others, courts have consistently agreed that online publication of deposition video or audio (i.e., on social media or some similarly public location, outside the court docket) is inappropriate and routinely enter protective orders to bar such misuse of deposition testimony. *See, e.g., Judicial Watch, Inc. v. U.S. Department of State*, 2019 WL 11890739 (D.D.C. Apr. 25, 2019); *Kuether v. Posley*, 2025 WL 484533, at *1 (E.D. Wis. Feb. 13, 2025); *Baker v. Buffenbarger*, 2004 WL 2124787, at *3 (N.D. Ill. Sept. 22, 2004); *Newson v. Oakton Community College*, 2021 WL 9793333, at *2 (N.D. Ill. Nov. 5, 2021); *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 267 (D. Conn. 2021).

Please let us know if you still plan to "publish" this or any other deposition video online despite our objections. If so, we will move for an emergency supplemental protective order to bar such misuse of deposition video that you recorded on your personal device over our objections, as well as any other discovery material you intend to publicly disclose while this matter is pending for a possible jury trial.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Friday, July 18, 2025 9:11 PM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

Your suggestion that "there is nothing for [you] to consider" is inaccurate. I have already outlined in prior emails the key issues and interpretive concerns surrounding the Protective Order. Defendants declined to continue those discussions at the

time, stating you were not interested in "going back and forth on these issues." It is not my obligation to repackage those points for your convenience after you've chosen to disregard them.

I will proceed with filing a motion asking the Court to clarify that certain interpretations of the PO—interpretations I have already presented and explained—are both reasonable and consistent with its language and purpose. To the extent the Court disagrees, I will request narrowly tailored modifications, not a wholesale revision. Whether Defendants choose to raise new objections at that stage is, of course, their decision, though I may object to any such arguments as untimely.

I will provide a redline if the Court deems one necessary. But I reject Defendants' attempt to impose procedural hurdles while refusing to engage the substance.

You are also welcome to comment on the attached deposition excerpt, which I intend to publish online. If you believe any portion of the content implicates confidentiality under the Protective Order, please inform me within seven days. While I remain open to reasonable concerns, I do not concede that the PO requires prior approval for the use of deposition content not expressly designated "Confidential."

Sincerely,
Michael Newman

On Fri, Jul 18, 2025 at 5:56 PM Berman, Amanda <ABerman@crowell.com> wrote:

105

Mr. Newman -


First and most importantly, unless and until the PO is modified by the Court, it remains binding on both parties. We do not and have not agreed to any action by you that would violate it. You suggested adding some language to modify it in one regard; we said we were open to that, but need to know exactly what part of the PO you propose to add that language in, and if you are proposing any other modifications to the PO so we can consider their effect on the whole document together. See the language from our last email below.


### *Protective Order*

*We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.*


Second, we have not "waived" objections or arguments or "stipulated" to anything. Again, if you want to modify the PO, we need to know exactly what you propose to change, and then either the parties jointly or you can proceed with a motion to modify. On our end, we see no need to modify or clarify the PO.


Third, when you say you intend to "publish" deposition excerpts and "related materials" in the "near future," what do you mean? Section 5 'Restrictions on Disclosure" of the PO bars the parties from using (including publishing) confidential materials gathered through discovery outside of the context of that litigation. Section 6(b) of the PO also restricts the public filing of testimony or documents marked "Confidential" within the context of the litigation. If, as you are preparing your motion for summary judgment/response, you decide to file or quote materials so designated, you must either move to seal or seek agreement that such materials can be de-designated as Confidential. If you publish materials in a way that violates the PO, we will take all appropriate action to enforce it, and may seek sanctions if appropriate.


As noted above, we remain willing to consider specific changes to the PO, but you need to specify exactly what you propose to change and where.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Friday, July 18, 2025 10:59 AM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.

Dear Counsel,

I am writing to follow up on our ongoing disputes regarding the scope and application of the Protective Order.

Your recent email indicated that Defendants do not wish to engage in further negotiation on these issues. While I respect that position, I also take it to mean that Defendants are now declining to raise any additional objections, clarifications, or stipulations beyond those already expressed. I recognize your current briefing schedule is consuming much of your time, but unless I hear otherwise, I will assume that any new arguments raised after this point are waived or untimely.

As I've previously stated, I intend to publish certain deposition excerpts and related materials in the near future. I will provide Defendants ample opportunity to review these materials in advance, consistent with the current Protective Order, Fed. R. Civ. P. 26(c), and the spirit of Local Rule 5.1(h). I remain open to reasonable, good-faith accommodations that preserve the rights of all parties while protecting the integrity of the record.

If Defendants' position has changed or if you wish to reengage on these issues, I'm happy to resume discussions. Otherwise, I plan to proceed accordingly.

Sincerely,

Michael Newman

On Wed, Jul 16, 2025, 6:50 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

I'm sure you will understand that, with our summary judgment brief due date now under two weeks away, we can't spend substantial time going back and forth on these issues. I also think most of your questions below have previously been answered.

To put our position succinctly, the FRCP requires the use of certified transcripts—and there is good reason for that. From our perspective, a key point is that it imposes a very substantial burden on our client, in terms of time and costs, to suggest that Defendants should have to verify your self-made transcripts against the audio and identify any discrepancies. In terms of specific objections, we previously noted that in transcripts you submitted in support of your motion for leave to amend, you added punctuation and characterizations of witnesses' demeanor or tone, which is not appropriate or something a court reporter would do. But again, we cannot take on the burden of reviewing your transcripts line-by-line to identify those and other issues and discrepancies. That is precisely why the rules require use of third-party certified transcripts. I'm not sure how a notary could fulfill that same function or ensure the accuracy of the transcripts in the same way as a court reporter.  We made what we thought was a very reasonable offer, which was that if you would share the costs of the certified transcripts with our client, we could share those with you so that all parties can use them in briefing. I understand from below that you are not willing to do so.

In regard to your planned motion, it is not clear to me precisely what relief you intend to ask the Court for. Please clarify that so I can ascertain my client's position on the motion. We would strongly oppose any request for expedited briefing. As noted, we are coming up on the deadline for our own summary judgment brief and so need to focus our efforts over the next two weeks on that.

Best,

**Amanda Shafer Berman**

Pronouns: she/her/hers Crowell

& Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Monday, July 14, 2025 3:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com> **Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my selfprepared deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgmentbriefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the officialaudio recordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcripts againstthe official audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restrictssuch use in summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion to enablethe Court to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

Thank you for your timely attention.

Regards,
Michael R. Newman
(808) 796-4708

Virus-free.www.avast.com

On Fri, Jul 11, 2025 at 3:07 PM <thayray@gmail.com> wrote:

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its

provisions as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreed-upon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows.

Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."* To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, lineby-line editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-byline editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.

You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?

In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and selftranscribed depositions. However, this was a brief, passing observation rather than a ruling made after devoted motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreed-upon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is clear, identical, and

available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including

restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman (808)
796-4708


On Sun, Jun 29, 2025 at 11:12 AM <thayray@gmail.com> wrote:

Dear Counsel,


I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.


Best wishes,

MRN


On Tue, Jun 24, 2025, 5:48 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman,


We respond to the points raised regarding the protective order, joint statement, and related discovery matters below.


**Protective Order**

We are open to adding language along the lines of your proposed addition, although we may



need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.


## Joint Statement and Privilege Log

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.


Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a year-and-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.


## Redacted Documents

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily" redacted documents in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

117

**Video Depositions on Personal Device**

The judge explained in his May 15 opinion that your reliance on video footage of depositions

created using a personal device is inappropriate and prohibited by the federal rules. *See* May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See* Opp'n Mot. File, ECF No. 93, at 2, 4. **The federal rules do not permit courts to rely on deposition transcripts or recordings created by parties.** See Fed. R. Civ. P. 28(c), 30(f); *see also Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020).")."). As you know, we raised this issue again at the recent status conference, and the court noted that it would be up to you to conform your summary judgment filings to the rules. As we indicated then, our client remains willing to share certified deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

## Public Disclosure of Depositions and Recordings

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under confidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as confidential. We are not open to modifying the PO in a way that would allow you to publicly share confidential information provided by the University in discovery or deposition testimony designated Confidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can file information designated as confidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as confidential and we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct confidentiality markings. We also produced documents in corresponding image files (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel files were designated as confidential. This information, which is sensitive business information kept confidential by the University, should be used only for purposes of this suit, and in accordance with its confidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

## Self-Created Transcripts and Use of AI

This is the first time we have been made aware that the self-created transcripts you referenced were AI-generated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts— concerns that are only heightened by the use of unidentified AI tools. Indeed, we objected to your use of AI when you identified its use when your deposition was being taken, which is the only time you contemporaneously identified

that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.


We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

**Use of Audio/Transcripts**

Our position regarding transcripts remains consistent with what we've stated above.


Best,

Crinesha



**Crinesha B. Berry** Crowell &

Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile



**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 21, 2025 11:21 AM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.


I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.


I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.


MRN


On Tue, Jun 17, 2025, 4:11 PM <thayray@gmail.com> wrote:

The following text included in the P.O. will help, but it does not fully address all of my present concerns:

"Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."

I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and

modify the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.

Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AIgenerated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN

On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:

> Mr. Newman:
>
> We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to file audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).
>
> We are not aware of any case or rule that would permit a party to rely on self-prepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deficiency" before enforcing the Rules' certification and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.

Separately, we want to clarify that we are not imposing any undue burden or costs onto you.

While we recognize the financial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's financial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clarifies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
    **Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
    **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
    **Subject:** Re: Conferring on procedural matters and case-related materials.

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have

done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be

inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN

Virus-free.www.avast.com

On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>

**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>

**Subject:** Re: Conferring on procedural matters and case-related materials.



**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN

---

**thayray@gmail.com** <thayray@gmail.com>                                <mark>Thu, Jul 24, 2025 at 1:05 PM</mark>
To: "Berman, Amanda" <ABerman@crowell.com>
Cc: "Berry, Crinesha" <CBerry@crowell.com>, "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>

Dear Ms. Berman,

Thank you for your message.

I am happy to include this issue in my upcoming motion, just as I have been prepared to do while attempting to engage you on the substance of this and other matters for more than seven weeks now. I remind you that my July 11 email asked for your clarification on this very issue, to which you replied on July 16 that you "can't spend substantial time going back and forth on these issues" and asserted you had already answered the question.

For the record, I note further that after my most recent July 18 email, you sat on your hands for six days, then escalated dramatically, accusing me of harassment, tainting a potential jury, and invading Defendants' privacy—despite conceding that the video contains no Confidential information and that neither the FRCP nor the PO prohibits its use. I note also that I expressly informed both Defendants and the Court of my intent to publish deposition videos in my January 9, 2025, Reply [ECF 95], and likely elsewhere, and it seems unlikely you have forgotten.

<mark>To ease your concerns and avoid any appearance of impropriety, I will not publish any deposition video online unless and until the Court has had an opportunity to resolve any live dispute concerning its permissibility. That said, I object to your suggestion that publication of lawfully created, non-confidential deposition footage is somehow improper. Your email mischaracterizes both the content of the video and my intent, which has remained consistent throughout this litigation.</mark>

In any case, given your stated objections, even at this late date, permissibility of publication will be a matter for the Court to decide. If you have any additional grounds beyond those already stated, whether on this or any other issue addressed in the above emails, I ask that you make them known now or else waive them as untimely.

Sincerely,
MRN

 Virus-free.www.avast.com

On Thu, Jul 24, 2025 at 11:29 AM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

We strongly object to your planned "publication" of video of the deposition of Ms. Lanier-Smith, or any other deponent, online. Please clarify where exactly you plan to "publish" this excerpt, and what your intent is in doing so.

While we do not claim that the excerpt you provided contains Confidential Information as that term is currently defined in the Protective Order, we can see no possible reason for "publishing" it online except to harass Ms. Lanier-Smith and invade her privacy. And publishing deposition video—which as you know was not the agreed method of recording— could taint the jury pool were this matter to survive summary judgment and go to trial. For these reasons among others, courts have consistently agreed that online publication of deposition video or audio (i.e., on social media or some similarly public location, outside the court docket) is inappropriate and routinely enter protective orders to bar such misuse of deposition testimony. *See, e.g., Judicial Watch, Inc. v. U.S. Department of State*, 2019 WL 11890739 (D.D.C. Apr. 25, 2019); *Kuether v. Posley*, 2025 WL 484533, at *1 (E.D. Wis. Feb. 13, 2025); *Baker v. Buffenbarger*, 2004 WL 2124787, at *3 (N.D. Ill. Sept. 22, 2004); *Newson v. Oakton Community College*, 2021 WL 9793333, at *2 (N.D. Ill. Nov. 5, 2021); *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 267 (D. Conn. 2021).

Please let us know if you still plan to "publish" this or any other deposition video online despite our objections. If so, we will move for an emergency supplemental protective order to bar such misuse of deposition video that you recorded on your personal device over our objections, as well as any other discovery material you intend to publicly disclose while this matter is pending for a possible jury trial.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
 **Sent:** Friday, July 18, 2025 9:11 PM
**To:** Berman, Amanda <ABerman@crowell.com>
 **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
 **Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

Your suggestion that "there is nothing for [you] to consider" is inaccurate. I have already outlined in prior emails the key issues and interpretive concerns surrounding the Protective Order. Defendants declined to continue those discussions at the time, stating you were not interested in "going back and forth on these issues." It is not my obligation to repackage those points for your convenience after you've chosen to disregard them.

I will proceed with filing a motion asking the Court to clarify that certain interpretations of the PO—interpretations I have already presented and explained—are both reasonable and consistent with its language and purpose. To the extent the Court disagrees, I will request narrowly tailored modifications, not a wholesale revision. Whether Defendants choose to raise new objections at that stage is, of course, their decision, though I may object to any such arguments as untimely.

I will provide a redline if the Court deems one necessary. But I reject Defendants' attempt to impose procedural hurdles while refusing to engage the substance.

You are also welcome to comment on the attached deposition excerpt, which I intend to publish online. If you believe any portion of the content implicates confidentiality under the Protective Order, please inform me within seven days. While I remain open to reasonable concerns, I do not concede that the PO requires prior approval for the use of deposition content not expressly designated "Confidential."

Sincerely,

Michael Newman

On Fri, Jul 18, 2025 at 5:56 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman -

First and most importantly, unless and until the PO is modified by the Court, it remains binding on both parties. We do not and have not agreed to any action by you that would violate it. You suggested adding some language to modify it in one regard; we said we were open to that, but need to know exactly what part of the PO you propose to add that language in, and if you are proposing any other modifications to the PO so we can consider their effect on the whole document together. See the language from our last email below.

### *Protective Order*

*We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.*

Second, we have not "waived" objections or arguments or "stipulated" to anything. Again, if you want to modify the PO, we need to know exactly what you propose to change, and then either the parties jointly or you can proceed with a motion to modify. On our end, we see no need to modify or clarify the PO.

Third, when you say you intend to "publish" deposition excerpts and "related materials" in the "near future," what do you mean? Section 5 'Restrictions on Disclosure' of the PO bars the parties from using (including publishing) confidential materials gathered through discovery outside of the context of that litigation. Section 6(b) of the PO also restricts the public filing of testimony or documents marked "Confidential" within the context of the litigation. If, as you are preparing your motion for summary judgment/response, you decide to file or quote materials so designated, you must either move to seal or seek agreement that such materials can be de-designated as Confidential. If you publish materials in a way that violates the PO, we will take all appropriate action to enforce it, and may seek sanctions if appropriate.

As noted above, we remain willing to consider specific changes to the PO, but you need to specify exactly what you propose to change and where.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Friday, July 18, 2025 10:59 AM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.

Dear Counsel,

I am writing to follow up on our ongoing disputes regarding the scope and application of the Protective Order.

Your recent email indicated that Defendants do not wish to engage in further negotiation on these issues. While I respect that position, I also take it to mean that Defendants are now declining to raise any additional objections, clarifications, or stipulations beyond those already expressed. I recognize your current briefing schedule is consuming much of your time, but unless I hear otherwise, I will assume that any new arguments raised after this point are waived or untimely.

As I've previously stated, I intend to publish certain deposition excerpts and related materials in the near future. I will provide Defendants ample opportunity to review these materials in advance, consistent with the current Protective Order, Fed. R. Civ. P. 26(c), and the spirit of Local Rule 5.1(h). I remain open to reasonable, good-faith accommodations that preserve the rights of all parties while protecting the integrity of the record.

If Defendants' position has changed or if you wish to reengage on these issues, I'm happy to resume discussions. Otherwise, I plan to proceed accordingly.

Sincerely,

Michael Newman

On Wed, Jul 16, 2025, 6:50 PM Berman, Amanda <ABerman@crowell.com> wrote:

> Mr. Newman –
>
> I'm sure you will understand that, with our summary judgment brief due date now under two weeks away, we can't spend substantial time going back and forth on these issues. I also think most of your questions below have previously been answered.

To put our position succinctly, the FRCP requires the use of certified transcripts—and there is good reason for

that. From our perspective, a key point is that it imposes a very substantial burden on our client, in terms of time and costs, to suggest that Defendants should have to verify your self-made transcripts against the audio and identify any discrepancies. In terms of specific objections, we previously noted that in transcripts you submitted in support of your motion for leave to amend, you added punctuation and characterizations of witnesses' demeanor or tone, which is not appropriate or something a court reporter would do. But again, we cannot take on the burden of reviewing your transcripts line-by-line to identify those and other issues and discrepancies. That is precisely why the rules require use of third-party certified transcripts. I'm not sure how a notary could fulfill that same function or ensure the accuracy of the transcripts in the same way as a court reporter.  We made what we thought was a very reasonable offer, which was that if you would share the costs of the certified transcripts with our client, we could share those with you so that all parties can use them in briefing. I understand from below that you are not willing to do so.


In regard to your planned motion, it is not clear to me precisely what relief you intend to ask the Court for. Please clarify that so I can ascertain my client's position on the motion. We would strongly oppose any request for expedited briefing. As noted, we are coming up on the deadline for our own summary judgment brief and so need to focus our efforts over the next two weeks on that.


Best,


**Amanda Shafer Berman**


Pronouns: she/her/hers Crowell

& Moring LLP

aberman@crowell.com

+1.202.688.3451 direct




**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Monday, July 14, 2025 3:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com> **Subject:** Re: Conferring on procedural maers and case-related materials.


Dear Counsel,


I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my selfprepared

deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgment briefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the official audio recordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcripts against the official audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restricts such use in summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion to enable the Court to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

Thank you for your timely attention.

Regards,
Michael R. Newman
(808) 796-4708

_____

Virus-free.www.avast.com

On Fri, Jul 11, 2025 at 3:07 PM <thayray@gmail.com> wrote:

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its provisions as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreed-upon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows.

Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

144

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware,*

*this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."*
To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, line-by-line editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-by-line editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.


You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?


In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and self-transcribed depositions. However, this was a brief, passing observation rather than a ruling made after devoted motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreed-upon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is clear, identical, and available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without



unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman (808)
796-4708

On Sun, Jun 29, 2025 at 11:12 AM <thayray@gmail.com> wrote:

Dear Counsel,

I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.

Best wishes,

MRN

On Tue, Jun 24, 2025, 5:48 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman,

We respond to the points raised regarding the protective order, joint statement, and related discovery matters below.

**Protective Order**

We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO— please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party

seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.

**Joint Statement and Privilege Log**

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.

Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a yearand-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.

## Redacted Documents

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily" redacted documents in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

## Video Depositions on Personal Device

The judge explained in his May 15 opinion that your reliance on video footage of depositions created using a personal device is inappropriate and prohibited by the federal rules. *See* May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See* Opp'n Mot. File, ECF No. 93, at 2, 4. ***The federal rules do not permit courts to rely on deposition transcripts or recordings created by parties.*** See Fed. R. Civ. P. 28(c), 30(f); *see also Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020).")."). As you know, we raised this issue again at the recent status conference, and the court noted that it would be up to you to conform your summary judgment filings to the rules. As we indicated then, our client remains willing to share certified deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

**Public Disclosure of Depositions and Recordings**

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under confidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as confidential. We are not open to modifying the PO in a way that would allow you to publicly share confidential information provided by the University in discovery or deposition testimony designated Confidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can file information designated as confidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as confidential and we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct confidentiality markings. We also produced documents in corresponding image files (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel files were designated as confidential. This information, which is sensitive business information kept confidential by the University, should be used only for purposes of this suit, and in accordance with its confidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

## Self-Created Transcripts and Use of AI

This is the first time we have been made aware that the self-created transcripts you referenced were AI-generated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts— concerns that are only heightened by the use of unidentified AI tools. Indeed, we objected to your use of AI when you identified its use when your deposition was being taken, which is the only time you contemporaneously identified that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.

We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

## Use of Audio/Transcripts

Our position regarding transcripts remains consistent with what we've stated above.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
 **Sent:** Saturday, June 21, 2025 11:21 AM
**To:** Berry, Crinesha <CBerry@crowell.com>
 **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>
 **Subject:** Re: Conferring on procedural matters and case-related materials.

I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.

I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.

MRN

On Tue, Jun 17, 2025, 4:11 PM <thayray@gmail.com> wrote:

The following text included in the P.O. will help, but it does not fully address all of my present concerns:

"Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."

I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.

155

Another concern I have is your designation as "confidential" documents that were so heavily

redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AI-generated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?


MRN


On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:


We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to file audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).


We are not aware of any case or rule that would permit a party to rely on selfprepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deficiency" before enforcing the Rules' certification and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.


Separately, we want to clarify that we are not imposing any undue burden or costs onto you. While we recognize the financial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's financial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the

same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clarifies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry** Crowell & Moring

LLP cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
    **Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
    **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>
    **Subject:** Re: Conferring on procedural matters and case-related materials.

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be



inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN

Virus-free.www.avast.com

On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda

<ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I

intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN

---

**Berman, Amanda** <ABerman@crowell.com>                    Thu, Jul 24, 2025 at 2:24 PM
To: "thayray@gmail.com" <thayray@gmail.com>
Cc: "Berry, Crinesha" <CBerry@crowell.com>, "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>

Mr. Newman –

I did not see anything in your prior emails indicating that you intended to "publish online" video of depositions or other discovery materials, as opposed to raising questions about how depositions transcripts and other discovery materials can be used in the litigation. Those are very different issues, in our view.

I understand from the below that you will not "publish online" deposition video unless and until the Court addresses the permissibility of doing so. If your intent changes in that regard, please let us know immediately so we can take appropriate protective action. We reserve all rights and arguments on this and any other issues regarding the use of discovery materials in or outside the litigation, including to move for protective relief as needed.

Finally, I wanted to make one final offer in an attempt to resolve the transcription issue raised in your recent motion. As you know, we previously offered to send you copies of the certified transcripts that our client paid to have created from the audio if you would split the costs incurred to obtain those transcripts. Having rounded up the associated invoices, I can tell you that the total we paid for the certified transcripts was $19,324.00. A 50/50 split would be $9,662 per side. We realize that may be difficult for you to pay at once, but our client would be willing to agree to an extended payment plan over 6 months or so if that would be helpful in resolving this issue. Please let me know if so. Best,

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Thursday, July 24, 2025 1:06 PM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berry, Crinesha <CBerry@crowell.com>; Berns-Zieve, Eli <EBerns-Zieve@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.


Dear Ms. Berman,

Thank you for your message.

I am happy to include this issue in my upcoming motion, just as I have been prepared to do while attempting to engage you on the substance of this and other matters for more than seven weeks now. I remind you that my July 11 email asked for your clarification on this very issue, to which you replied on July 16 that you "can't spend substantial time going back and forth on these issues" and asserted you had already answered the question.

For the record, I note further that after my most recent July 18 email, you sat on your hands for six days, then escalated dramatically, accusing me of harassment, tainting a potential jury, and invading Defendants' privacy—despite conceding that the video contains no Confidential information and that neither the FRCP nor the PO prohibits its use. I note also that I expressly informed both Defendants and the Court of my intent to publish deposition videos in my January 9, 2025, Reply [ECF 95], and likely elsewhere, and it seems unlikely you have forgotten.

To ease your concerns and avoid any appearance of impropriety, I will not publish any deposition video online unless and until the Court has had an opportunity to resolve any live dispute concerning its permissibility. That said, I object to your suggestion that publication of lawfully created, non-confidential deposition footage is somehow improper. Your email mischaracterizes both the content of the video and my intent, which has remained consistent throughout this litigation.

In any case, given your stated objections, even at this late date, permissibility of publication will be a matter for the Court to decide. If you have any additional grounds beyond those already stated, whether on this or any other issue addressed in the above emails, I ask that you make them known now or else waive them as untimely.


Sincerely,

MRN

---

Virus-free.www.avast.com


On Thu, Jul 24, 2025 at 11:29 AM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

We strongly object to your planned "publication" of video of the deposition of Ms. Lanier-Smith, or any other deponent, online. Please clarify where exactly you plan to "publish" this excerpt, and what your intent is in doing so.

While we do not claim that the excerpt you provided contains Confidential Information as that term is currently defined in the Protective Order, we can see no possible reason for "publishing" it online except to harass Ms. Lanier-Smith and invade her privacy. And publishing deposition video—which as you know was not the agreed method of recording— could taint the jury pool were this matter to survive summary judgment and go to trial. For these reasons among others, courts have consistently agreed that online publication of deposition video or audio (i.e., on social media or some similarly public location, outside the court docket) is inappropriate and routinely enter protective orders to bar such misuse of deposition testimony. *See, e.g., Judicial Watch, Inc. v. U.S. Department of State*, 2019 WL 11890739 (D.D.C. Apr. 25, 2019); *Kuether v. Posley*, 2025 WL 484533, at *1 (E.D. Wis. Feb. 13, 2025); *Baker v. Buffenbarger*, 2004 WL 2124787, at *3 (N.D. Ill. Sept. 22, 2004); *Newson v. Oakton Community College*, 2021 WL 9793333, at *2 (N.D. Ill. Nov. 5, 2021); *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 267 (D. Conn. 2021).

Please let us know if you still plan to "publish" this or any other deposition video online despite our objections. If so, we will move for an emergency supplemental protective order to bar such misuse of deposition video that you recorded on your personal device over our objections, as well as any other discovery material you intend to publicly disclose while this matter is pending for a possible jury trial.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
 **Sent:** Friday, July 18, 2025 9:11 PM
**To:** Berman, Amanda <ABerman@crowell.com>
 **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
 **Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

Your suggestion that "there is nothing for [you] to consider" is inaccurate. I have already outlined in prior emails the key issues and interpretive concerns surrounding the Protective Order. Defendants declined to continue those discussions at the time, stating you were not interested in "going back and forth on these issues." It is not my obligation to repackage those points for your convenience after you've chosen to disregard them.

I will proceed with filing a motion asking the Court to clarify that certain interpretations of the PO—interpretations I have already presented and explained—are both reasonable and consistent with its language and purpose. To the extent the Court disagrees, I will request narrowly tailored modifications, not a wholesale revision. Whether Defendants choose to raise new objections at that stage is, of course, their decision, though I may object to any such arguments as untimely.

I will provide a redline if the Court deems one necessary. But I reject Defendants' attempt to impose procedural hurdles while refusing to engage the substance.

You are also welcome to comment on the attached deposition excerpt, which I intend to publish online. If you believe any

portion of the content implicates confidentiality under the Protective Order, please inform me within seven days. While I remain open to reasonable concerns, I do not concede that the PO requires prior approval for the use of deposition content not expressly designated "Confidential."

Sincerely,
Michael Newman

On Fri, Jul 18, 2025 at 5:56 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman -

First and most importantly, unless and until the PO is modified by the Court, it remains binding on both parties. We do not and have not agreed to any action by you that would violate it. You suggested adding some language to modify it in one regard; we said we were open to that, but need to know exactly what part of the PO you propose to add that language in, and if you are proposing any other modifications to the PO so we can consider their effect on the whole document together. See the language from our last email below.

***Protective Order***

*We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.*

Second, we have not "waived" objections or arguments or "stipulated" to anything. Again, if you want to modify the PO, we need to know exactly what you propose to change, and then either the parties jointly or you can proceed with a motion to modify. On our end, we see no need to modify or clarify the PO.

Third, when you say you intend to "publish" deposition excerpts and "related materials" in the "near future," what do you mean? Section 5 'Restrictions on Disclosure" of the PO bars the parties from using (including publishing) confidential materials gathered through discovery outside of the context of that litigation. Section 6(b) of the PO also restricts the public filing of testimony or documents marked "Confidential" within the context of the litigation. If, as you are preparing your motion for summary judgment/response, you decide to file or quote materials so designated, you must either move to seal or seek agreement that such materials can be de-designated as Confidential. If you publish materials in a way that violates the PO, we will take all appropriate action to enforce it, and may seek sanctions if appropriate.

As noted above, we remain willing to consider specific changes to the PO, but you need to specify exactly what you propose to change and where.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Friday, July 18, 2025 10:59 AM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.

Dear Counsel,

I am writing to follow up on our ongoing disputes regarding the scope and application of the Protective Order.

Your recent email indicated that Defendants do not wish to engage in further negotiation on these issues. While I respect that position, I also take it to mean that Defendants are now declining to raise any additional objections, clarifications, or stipulations beyond those already expressed. I recognize your current briefing schedule is consuming much of your time, but unless I hear otherwise, I will assume that any new arguments raised after this point are waived or untimely.

As I've previously stated, I intend to publish certain deposition excerpts and related materials in the near future. I will provide Defendants ample opportunity to review these materials in advance, consistent with the current Protective Order, Fed. R. Civ. P. 26(c), and the spirit of Local Rule 5.1(h). I remain open to reasonable, good-faith accommodations that preserve the rights of all parties while protecting the integrity of the record.

If Defendants' position has changed or if you wish to reengage on these issues, I'm happy to resume discussions. Otherwise, I plan to proceed accordingly.

Sincerely,

Michael Newman

On Wed, Jul 16, 2025, 6:50 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

172

I'm sure you will understand that, with our summary judgment brief due date now under two weeks away, we

can't spend substantial time going back and forth on these issues. I also think most of your questions below have previously been answered.

To put our position succinctly, the FRCP requires the use of certified transcripts—and there is good reason for that. From our perspective, a key point is that it imposes a very substantial burden on our client, in terms of time and costs, to suggest that Defendants should have to verify your self-made transcripts against the audio and identify any discrepancies. In terms of specific objections, we previously noted that in transcripts you submitted in support of your motion for leave to amend, you added punctuation and characterizations of witnesses' demeanor or tone, which is not appropriate or something a court reporter would do. But again, we cannot take on the burden of reviewing your transcripts line-by-line to identify those and other issues and discrepancies. That is precisely why the rules require use of third-party certified transcripts. I'm not sure how a notary could fulfill that same function or ensure the accuracy of the transcripts in the same way as a court reporter.  We made what we thought was a very reasonable offer, which was that if you would share the costs of the certified transcripts with our client, we could share those with you so that all parties can use them in briefing. I understand from below that you are not willing to do so.

In regard to your planned motion, it is not clear to me precisely what relief you intend to ask the Court for. Please clarify that so I can ascertain my client's position on the motion. We would strongly oppose any request for expedited briefing. As noted, we are coming up on the deadline for our own summary judgment brief and so need to focus our efforts over the next two weeks on that.

Best,

**Amanda Shafer Berman**

Pronouns: she/her/hers Crowell

& Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Monday, July 14, 2025 3:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com> **Subject:** Re: Conferring on procedural maers and case-related materials.

Dear Counsel,

174

I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take

more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my selfprepared deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgmentbriefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the officialaudio recordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcriptsagainst the official audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restrictssuch use in summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion toenable the Court to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

Thank you for your timely attention.

Regards,
Michael R. Newman
(808) 796-4708


Virus-free.www.avast.com


On Fri, Jul 11, 2025 at 3:07 PM <thayray@gmail.com> wrote:

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its provisions

as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreed-upon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows. Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."* To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, lineby-line editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-by-line editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.

You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?

In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and self-transcribed depositions. However, this was a brief, passing observation rather than a ruling made after devoted motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreedupon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is clear, identical, and available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including

restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman (808)
796-4708

On Sun, Jun 29, 2025 at 11:12 AM <thayray@gmail.com> wrote:

Dear Counsel,

I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.

Best wishes,

MRN

On Tue, Jun 24, 2025, 5:48 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman,

We respond to the points raised regarding the protective order, joint statement, and related discovery matters below.

**Protective Order**

180

We are open to adding language along the lines of your proposed addition, although we may

need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO— please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.

**Joint Statement and Privilege Log**

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.

Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a year-and-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.

**Redacted Documents**

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily" redacted documents in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

**Video Depositions on Personal Device**

The judge explained in his May 15 opinion that your reliance on video footage of depositions

created using a personal device is inappropriate and prohibited by the federal rules. *See* May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See* Opp'n Mot. File, ECF No. 93, at 2, 4. ***The federal rules do not permit courts to rely on deposition transcripts or recordings created by parties.*** See Fed. R. Civ. P. 28(c), 30(f); *see also Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020).")."). As you know, we raised this issue again at the recent status conference, and the court noted that it would be up to you to conform your summary judgment filings to the rules. As we indicated then, our client remains willing to share certified deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

### Public Disclosure of Depositions and Recordings

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under confidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as confidential. We are not open to modifying the PO in a way that would allow you to publicly share confidential information provided by the University in discovery or deposition testimony designated Confidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can file information designated as confidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as confidential and we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct confidentiality markings. We also produced documents in corresponding image files (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel files were designated as confidential. This information, which is sensitive business information kept confidential by the University, should be used only for purposes of this suit, and in accordance with its confidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

### Self-Created Transcripts and Use of AI

This is the first time we have been made aware that the self-created transcripts you referenced were AI-generated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts— concerns that are only heightened by the use of unidentified AI tools. Indeed, we objected to your use of AI when you identified its use when your deposition was being taken, which is the only time you contemporaneously identified

that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.


We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

**Use of Audio/Transcripts**

Our position regarding transcripts remains consistent with what we've stated above.


Best,

Crinesha



**Crinesha B. Berry** Crowell &

Moring LLP cberry@crowell.com

+1.202.688.3435 direct | +1.757.593.4107 mobile



**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Saturday, June 21, 2025 11:21 AM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.


I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.


I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.


MRN


On Tue, Jun 17, 2025, 4:11 PM <thayray@gmail.com> wrote:

The following text included in the P.O. will help, but it does not fully address all of my present concerns:

"Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."

I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify

the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.

Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were AI-generated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN

On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to file audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).

We are not aware of any case or rule that would permit a party to rely on selfprepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deficiency" before enforcing the Rules' certification and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.

Separately, we want to clarify that we are not imposing any undue burden or costs onto you.

While we recognize the financial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's financial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your self-created transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clarifies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry** Crowell & Moring

LLP cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your



March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

> As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?
>
> Regards,
> MRN

Virus-free.www.avast.com

On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

> Mr. Newman:
>
> As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.
>
> Best,
>
> Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP

cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>

**Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

---

**Exercise caution with links and attachments**

You may not have corresponded with this sender before. Exercise caution when engaging with this email.

Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN

On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,

Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The

PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.


MRN


**thayray@gmail.com** <thayray@gmail.com>                                    Fri, Jul 25, 2025 at 12:56 PM
To: "Berman, Amanda" <ABerman@crowell.com>
Cc: "Berry, Crinesha" <CBerry@crowell.com>, "Berns-Zieve, Eli" <EBerns-Zieve@crowell.com>

Thank you again for your message.

Respectfully, I believe the record is clear that I have been transparent about both my intent to seek public accountability through publication of the deposition footage and my commitment to follow any directive of the Court. As noted in my July 11 email, I

expressly signaled my intent to "use, share, or publish" these videos and to "seek the Court's guidance" as necessary. My January 9, 2025, Reply [ECF 95] further explained that public scrutiny was a primary reason for recording them. You are, of course, free to cast our communications as you see fit; I trust the Court to discern whether any ambiguity exists.

As to the transcript issue, I appreciate the clarification of Defendants' final offer, which appears identical to the previous proposal. I must decline that offer for the reasons stated in my motion.

MRN

 Virus-free.www.avast.com

On Thu, Jul 24, 2025 at 2:24 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –


I did not see anything in your prior emails indicating that you intended to "publish online" video of depositions or other discovery materials, as opposed to raising questions about how depositions transcripts and other discovery materials can be used in the litigation. Those are very different issues, in our view.


I understand from the below that you will not "publish online" deposition video unless and until the Court addresses the permissibility of doing so. If your intent changes in that regard, please let us know immediately so we can take appropriate protective action. We reserve all rights and arguments on this and any other issues regarding the use of discovery materials in or outside the litigation, including to move for protective relief as needed.


Finally, I wanted to make one final offer in an attempt to resolve the transcription issue raised in your recent motion. As you know, we previously offered to send you copies of the certified transcripts that our client paid to have created from the audio if you would split the costs incurred to obtain those transcripts. Having rounded up the associated invoices, I can tell you that the total we paid for the certified transcripts was $19,324.00. A 50/50 split would be $9,662 per side. We realize that may be difficult for you to pay at once, but our client would be willing to agree to an

extended payment plan over 6 months or so if that would be helpful in resolving this issue. Please let me know if so.

Best,

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Thursday, July 24, 2025 1:06 PM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berry, Crinesha <CBerry@crowell.com>; Berns-Zieve, Eli <EBerns-Zieve@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.

Dear Ms. Berman,

Thank you for your message.

I am happy to include this issue in my upcoming motion, just as I have been prepared to do while attempting to engage you on the substance of this and other matters for more than seven weeks now. I remind you that my July 11 email asked for your clarification on this very issue, to which you replied on July 16 that you "can't spend substantial time going back and forth on these issues" and asserted you had already answered the question.

For the record, I note further that after my most recent July 18 email, you sat on your hands for six days, then escalated dramatically, accusing me of harassment, tainting a potential jury, and invading Defendants' privacy—despite conceding that the video contains no Confidential information and that neither the FRCP nor the PO prohibits its use. I note also that I expressly informed both Defendants and the Court of my intent to publish deposition videos in my January 9, 2025, Reply [ECF 95], and likely elsewhere, and it seems unlikely you have forgotten.

To ease your concerns and avoid any appearance of impropriety, I will not publish any deposition video online unless and until the Court has had an opportunity to resolve any live dispute concerning its permissibility. That said, I object to your suggestion that publication of lawfully created, non-confidential deposition footage is somehow improper. Your email mischaracterizes both the content of the video and my intent, which has remained consistent throughout this litigation.

In any case, given your stated objections, even at this late date, permissibility of publication will be a matter for the Court to decide. If you have any additional grounds beyond those already stated, whether on this or any other issue addressed in the above emails, I ask that you make them known now or else waive them as untimely.

Sincerely,

199

MRN

---

Virus-free. www.avast.com

On Thu, Jul 24, 2025 at 11:29 AM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

We strongly object to your planned "publication" of video of the deposition of Ms. Lanier-Smith, or any other deponent, online. Please clarify where exactly you plan to "publish" this excerpt, and what your intent is in doing so.

While we do not claim that the excerpt you provided contains Confidential Information as that term is currently defined in the Protective Order, we can see no possible reason for "publishing" it online except to harass Ms. Lanier-Smith and invade her privacy. And publishing deposition video—which as you know was not the agreed method of recording— could taint the jury pool were this matter to survive summary judgment and go to trial. For these reasons among others, courts have consistently agreed that online publication of deposition video or audio (i.e., on social media or some similarly public location, outside the court docket) is inappropriate and routinely enter protective orders to bar such misuse of deposition testimony. *See, e.g., Judicial Watch, Inc. v. U.S. Department of State*, 2019 WL 11890739 (D.D.C. Apr. 25, 2019); *Kuether v. Posley*, 2025 WL 484533, at *1 (E.D. Wis. Feb. 13, 2025); *Baker v. Buffenbarger*, 2004 WL 2124787, at *3 (N.D. Ill. Sept. 22, 2004); *Newson v. Oakton Community College*, 2021 WL 9793333, at *2 (N.D. Ill. Nov. 5, 2021); *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 267 (D. Conn. 2021).

Please let us know if you still plan to "publish" this or any other deposition video online despite our objections. If so, we will move for an emergency supplemental protective order to bar such misuse of deposition video that you recorded on your personal device over our objections, as well as any other discovery material you intend to publicly disclose while this matter is pending for a possible jury trial.

**Amanda Shafer Berman**

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

**From:** thayray@gmail.com <thayray@gmail.com>

**Sent:** Friday, July 18, 2025 9:11 PM
**To:** Berman, Amanda <ABerman@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.


Dear Counsel,

Your suggestion that "there is nothing for [you] to consider" is inaccurate. I have already outlined in prior emails the key issues and interpretive concerns surrounding the Protective Order. Defendants declined to continue those discussions at the time, stating you were not interested in "going back and forth on these issues." It is not my obligation to repackage those points for your convenience after you've chosen to disregard them.

I will proceed with filing a motion asking the Court to clarify that certain interpretations of the PO—interpretations I have already presented and explained—are both reasonable and consistent with its language and purpose. To the extent the Court disagrees, I will request narrowly tailored modifications, not a wholesale revision. Whether Defendants choose to raise new objections at that stage is, of course, their decision, though I may object to any such arguments as untimely.

I will provide a redline if the Court deems one necessary. But I reject Defendants' attempt to impose procedural hurdles while refusing to engage the substance.

You are also welcome to comment on the attached deposition excerpt, which I intend to publish online. If you believe any portion of the content implicates confidentiality under the Protective Order, please inform me within seven days. While I remain open to reasonable concerns, I do not concede that the PO requires prior approval for the use of deposition content not expressly designated "Confidential."

Sincerely,
Michael Newman



On Fri, Jul 18, 2025 at 5:56 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman -


First and most importantly, unless and until the PO is modified by the Court, it remains binding on both parties. We do not and have not agreed to any action by you that would violate it. You suggested adding some language to modify it in one regard; we said we were open to that, but need to know exactly what part of the PO you propose to add that language in, and if you are proposing any other modifications to the PO so we can consider their effect on the whole document together. See the language from our last email below.

**_Protective Order_**

*We are open to adding language along the lines of your proposed addition, although we may need to adjust that*

*language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO—please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.*

Second, we have not "waived" objections or arguments or "stipulated" to anything. Again, if you want to modify the PO, we need to know exactly what you propose to change, and then either the parties jointly or you can proceed with a motion to modify. On our end, we see no need to modify or clarify the PO.

Third, when you say you intend to "publish" deposition excerpts and "related materials" in the "near future," what do you mean? Section 5 'Restrictions on Disclosure' of the PO bars the parties from using (including publishing) confidential materials gathered through discovery outside of the context of that litigation. Section 6(b) of the PO also restricts the public filing of testimony or documents marked "Confidential" within the context of the litigation. If, as you are preparing your motion for summary judgment/response, you decide to file or quote materials so designated, you must either move to seal or seek agreement that such materials can be de-designated as Confidential. If you publish materials in a way that violates the PO, we will take all appropriate action to enforce it, and may seek sanctions if appropriate.

As noted above, we remain willing to consider specific changes to the PO, but you need to specify exactly what you propose to change and where.

**Amanda Shafer Berman**

Pronouns: she/her/hers Crowell

& Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Friday, July 18, 2025 10:59 AM
**To:** Berman, Amanda <ABerman@crowell.com>

**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berry, Crinesha <CBerry@crowell.com>
**Subject:** Re: Conferring on procedural maers and case-related materials.


Dear Counsel,


I am writing to follow up on our ongoing disputes regarding the scope and application of the Protective Order.

Your recent email indicated that Defendants do not wish to engage in further negotiation on these issues. While I

respect that position, I also take it to mean that Defendants are now declining to raise any additional objections, clarifications, or stipulations beyond those already expressed. I recognize your current briefing schedule is consuming much of your time, but unless I hear otherwise, I will assume that any new arguments raised after this point are waived or untimely.

As I've previously stated, I intend to publish certain deposition excerpts and related materials in the near future. I will provide Defendants ample opportunity to review these materials in advance, consistent with the current Protective Order, Fed. R. Civ. P. 26(c), and the spirit of Local Rule 5.1(h). I remain open to reasonable, good-faith accommodations that preserve the rights of all parties while protecting the integrity of the record.

If Defendants' position has changed or if you wish to reengage on these issues, I'm happy to resume discussions. Otherwise, I plan to proceed accordingly.

Sincerely,

Michael Newman

On Wed, Jul 16, 2025, 6:50 PM Berman, Amanda <ABerman@crowell.com> wrote:

Mr. Newman –

I'm sure you will understand that, with our summary judgment brief due date now under two weeks away, we can't spend substantial time going back and forth on these issues. I also think most of your questions below have previously been answered.

To put our position succinctly, the FRCP requires the use of certified transcripts—and there is good reason for that. From our perspective, a key point is that it imposes a very substantial burden on our client, in terms of time and costs, to suggest that Defendants should have to verify your self-made transcripts against the audio and identify any discrepancies. In terms of specific objections, we previously noted that in transcripts you submitted in support of your motion for leave to amend, you added punctuation and characterizations of witnesses' demeanor or tone, which is not appropriate or something a court reporter would do. But again, we cannot take on the burden of reviewing your transcripts line-by-line to identify those and other issues and discrepancies. That is precisely why the rules require use of third-party certified transcripts. I'm not sure how a notary could fulfill that same function or ensure the accuracy of the transcripts in the same way as a court reporter.  We made what we thought was a very reasonable offer, which was that if you would share the costs of the certified transcripts with our client, we could share those with you so that all parties can use them in briefing. I understand from below that you are not willing to do so.

In regard to your planned motion, it is not clear to me precisely what relief you intend to ask the Court for. Please clarify that so I can ascertain my client's position on the motion. We would strongly oppose any request for expedited briefing. As noted, we are coming up on the deadline for our own summary judgment brief and so need to focus our efforts over the next two weeks on that.

Best,

Amanda Shafer Berman

Pronouns: she/her/hers

Crowell & Moring LLP

aberman@crowell.com

+1.202.688.3451 direct

---

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Monday, July 14, 2025 3:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural ma ers and case-related materials.

Dear Counsel,

I'm writing again because, while we still have several areas of disagreement under discussion, and I appreciate they may take more time to resolve, I think I must separate out the more urgent and time-sensitive issue regarding use of my self-prepared deposition transcripts in summary judgment briefing. In this regard, I believe I ought to move the Court separately on this distinct issue, with a request for expedited consideration.

Before I do, I would like to clarify and invite your response on the following specific questions related to this issue:

1. What are your specific grounds for opposing my use of self-prepared deposition transcripts in summary judgment briefing?

2. Do you have any specific objections to the accuracy of my finalized, line-edited transcripts derived from the official audio recordings to date?

3. Do you object even if I stipulate that the official audio recordings govern in the event of any dispute over wording?

4. Would you object if, as an alternative, I sought additional notary review or certification of the finalized transcripts against the official audio?

5. Do you contend that any other rule, agreement, order, or consideration, independent of the FRCP, prohibits or restricts such use in summary judgment briefing?

6. Will you oppose the motion, and if so, on what grounds?

7. Given the August 15 deadline, would you be willing to agree to an expedited briefing schedule for this motion to enable the Court to rule in time for summary judgment briefing preparation?

Please let me know your responses as soon as possible so I can include them as part of my motion certification.

Thank you for your timely attention.

Regards,
Michael R. Newman                           210
(808) 796-4708

Virus-free.www.avast.com

On Fri, Jul 11, 2025 at 3:07 PM <thayray@gmail.com> wrote:

Dear Counsel,

I am writing to resume our discussions concerning the Protective Order (PO), Joint Statement (JS), and related issues. Thank you for your patience during my recent hiatus. I have now returned to Washington and am turning my attention back to motions practice on these issues.

Let me be clear. My fundamental intention has always been to clarify the PO, to properly interpret its provisions as we all understood them from the beginning, to ask the Court to accept and enforce these reasonable interpretations, and to demonstrate that your conflicting alternate interpretations represent revisions and attempts to stretch meanings beyond their stated and agreed-upon intent. In our recent emails conferring on these matters, you have seemingly reframed my contentions as "modifications" of the PO. This attempted reframing leaves me wary of proposing any further redline amendments that could be represented as requests for modification rather than clarification. To be sure, where the Court interprets language in favor of Defendants, I naturally ask the court to modify the PO appropriately as justice allows.

Your most recent email laying out Defendants' position suggests we aren't finding common ground on the interpretive issues I've raised. Any proposals you may have that might narrow the dispute before the Court remain welcome, but we seem to be reaching a point where further conferral may be unproductive and the issues ripe for motions practice.

Briefly, I want to address the following excerpt from your email: *"Regarding the privilege log, as you are aware, this language was previously negotiated in March 2024 and agreed upon by both you and your former counsel."* To the best of my recollection, my former counsel had no involvement in the JS, and I do not recall discussing either the JS or the PO with him. If you have any information suggesting he provided input, please share it.

In addition to seeking to clarify, and if necessary modify, the PO, my motion will seek express Court approval for use of my independently produced transcripts. To date, you have not identified any defect in any of them other than your objection to my use of exclamation points. If you have had any specific objections based on the transcripts' *accuracy*, please let me know before motions commence.

While I do not view my working draft transcripts as relevant under the JS, the PO, or the FRCP, I recognize you have expressed concerns about my use of machine-generated drafts, for reasons that remain unclear. To address those concerns, I would be willing to consider producing the initial raw text generated via www.happyscribe.com if doing so would meaningfully narrow any disputes about my transcripts. However, I wish to be clear that I see no obligation to produce these materials as part of this conferral process, and any willingness on my part is intended solely as a good-faith compromise to minimize the burden on the Court.

These initial machine-generated outputs were rife with transcription errors and required time-intensive, line-by-line editing to ensure completeness and accuracy in filings. In each instance, I personally listened carefully to every minute of audio, using the machine-generated text as a rough guide, and undertook detailed, line-by-line editing to produce as complete and accurate a transcript as possible. That process was extremely demanding and labor-intensive. You have since asked the Court to insist on professional reporter-certified transcripts, but even if you had legitimate grounds for that insistence, I simply do not have the financial wherewithal to pay the thousands of dollars such services would cost. Even if I did, those costs could exceed any remedy the Court ultimately awards, effectively pricing me out of legal action.

You wrote, *"We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13*

*depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules."* I do not understand the basis for your objection to this proposal. Could you please clarify your specific concerns?

In a footnote in its May 15 order, the Court referenced my desired use of personal video recordings and self-transcribed depositions. However, this was a brief, passing observation rather than a ruling made after devoted motions practice or full briefing on the matter as I am now seeking, and it appears to be dicta in this context. While I understand your position is that these materials do not qualify as official deposition records, that is not the question being presented here. The depositions were conducted before an agreed-upon officer who administered the oath and distributed the official audio recording to all parties. My transcripts are derived directly from that audio and serve as an accurate, convenient text version. I am willing to stipulate that the audio recording governs in the event of any dispute over accuracy. I do not believe the Federal Rules prohibit parties from using such transcripts in motions practice when the underlying official record is clear, identical, and available for verification. I also don't believe *Alcorn* controls here, as I am not seeking to substitute any uncertified recording or transcript as an alternative official deposition record.

I acknowledge that, under the PO, any materials designated "Confidential" must be treated accordingly, including restrictions on public disclosure. However, I am unclear whether you are asserting that this obligation imposes a blanket restriction on all deposition recordings, transcripts, and other discovery documents regardless of designation. My position is that I am entitled to use, share, or publish any of these materials subject only to valid confidentiality designations under the PO. I am preparing to redact content designated as "Confidential" prior to any public disclosure and to provide Defendants with proposed redacted versions so that you can confirm they exclude designated Confidential content. If there is any dispute over whether specific content has been appropriately designated "Confidential," I will seek the Court's guidance.

I am committed to conferring in good faith to see whether we can resolve or narrow these issues without unnecessary motion practice. I expect this process could take another one to two weeks. I had planned to propose filing around July 30, when I anticipate your summary judgment motion. This would allow you time to prepare an opposition without being burdened with overlapping deadlines. However, I recognize that my ability to litigate summary judgment filings may be significantly affected by my ability to file transcripts as supporting evidence. I welcome any suggestions you have regarding motion timelines.

Regards,
Michael R. Newman (808) 796-
4708

On Sun, Jun 29, 2025 at 11:12 AM <thayray@gmail.com> wrote:

Dear Counsel,

I have been unable to devote attention to your latest email and our lingering disagreement on these issues under discussion as I am currently in Oklahoma attending to end of life matters for my father, who has taken an unexpected turn is now expected to live only another few days. Therefore, I appreciate your patience and understanding as I take a temporary pause from litigation related matters. For now, I don't foresee moving for any change in our summary judgment schedule, but it seems more likely that motions practice on these issues we are discussing could be delayed.

Best wishes,

MRN



On Tue, Jun 24, 2025, 5:48 PM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman,

We respond to the points raised regarding the protective order, joint statement, and related discovery matters below.

**Protective Order**

We are open to adding language along the lines of your proposed addition, although we may need to adjust that language to make clear that the University, for its part, remains bound by FERPA to keep student information confidential. But we cannot agree to any revised language in a vacuum. You state the proposed edit does not fully capture your concerns; if you intend to propose other adjustments to the PO, we need to know what and where they are so we can assess all proposed changes together, consider how they change the overall scope of the agreement and the parties' obligations, and avoid introducing inconsistencies. As previously requested, please provide a redline markup of the PO. If you do not intend to provide a redline markup—which would be the easiest way to proceed and which the court will need if you intend to move for revision of the PO — please identify the page number and section of the PO that you are proposing to revise. We will consider any revisions to the PO proposed by you in good faith, but it is incumbent on you to provide any changes for our consideration as you are the party seeking a modification to the PO. At current there is nothing for us to consider given that you have not provided your actual proposed revisions in redline.

**Joint Statement and Privilege Log**

With respect to the joint statement's language regarding the University's handling of student information, that language is meant to simply convey the University's position as to why a protective order is appropriate. However, we reiterate that the University remains bound by its obligations under FERPA, which prohibits the disclosure of student identities. Your characterization of redactions as a mechanism to "shield misconduct" misrepresents these statutory protections. As we have stated throughout this litigation, the University is not at liberty to disclose information that could compromise student privacy. Therefore, we will not entertain the removal of any language intended to protect student privacy.

Regarding the privilege log, as you are aware, this language was previously negotiated in

March 2024 and agreed upon by both you and your former counsel. We made you aware of our position regarding this language as it relates to a privilege log last fall, and you had many opportunities to raise this in either your motions to compel or motion for sanctions. You did so in the latter, and the court declined to order the University to produce a privilege log. At this stage of the litigation, nine months after discovery has closed, almost a year-and-a-half since the joint statement was negotiated, and after the Court has already addressed your request for a privilege log, we do not intend to provide a privilege log or revise the PO in any way that would require the University to disclose additional information or compromise students' privacy.

**Redacted Documents**

While you may disagree with the extent of the University's redactions, we do not agree documents were "heavily redacted" for no "clear basis." As previously explained, *all* redactions were made in accordance with FERPA or were based on privileged communications. Many of the discovery documents includes student names and information, which were properly redacted. Further, you previously raised this issue of "heavily" redacted documents in your motion for sanctions, which was denied. Accordingly, we do not intend to revisit the issue and do not believe further discussion regarding redactions is warranted.

**Video Depositions on Personal Device**

The judge explained in his May 15 opinion that your reliance on video footage of depositions created using a personal device is inappropriate and prohibited by the federal rules. *See* May 15 Order, n.3 ("Filing the exhibits on the public docket is further inappropriate because they were made by Newman himself—the video recording was taken on his wife's iPhone, and the transcript was typed by Newman. *See* Opp'n Mot. File, ECF No. 93, at 2, 4. ***The federal rules do not permit courts to rely on deposition transcripts or recordings created by parties.*** See Fed. R. Civ. P. 28(c), 30(f); *see also Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020).").". As you know, we raised this issue again at the recent status conference, and the court noted that it would be up to you to conform your summary judgment filings to the rules. As we indicated then, our client remains willing to share certified deposition transcripts that they have paid to have created from the audio recordings by a court reporter service if you are willing to share the costs incurred to create those transcripts.

**Public Disclosure of Depositions and Recordings**

Consistent with the PO, the University does not agree to any public disclosure of discovery materials that have either been produced or discussed during depositions under confidentiality designations. We remind you that the PO restricts your use of any materials that the University has designated as confidential. We are not open to modifying the PO in a way that would allow you to publicly share confidential information provided by the University in discovery or deposition testimony designated Confidential, except as expressly permitted under the limited disclosure provisions in the PO. As also contemplated by the PO, information disclosed during discovery is to be used only for purposes of this suit. We do not think it is appropriate to change that rule so as to allow you to publicly disseminate information about the University and its personnel (including non-parties to this litigation) in an attempt to publicly chastise or embarrass

them, which seems to be your sole intent in this regard. Of course, per the terms of the PO, you can file information designated as confidential under seal if that information is relevant for the Court's consideration.

The law school admissions data produced by the University was designated as confidential and

we do not agree to any change in its designation. If you recall, we produced all documents, including the admissions data, in native format (i.e., Excel spreadsheets), where applicable, which do not allow for direct confidentiality markings. We also produced documents in corresponding image files (TIFFS), which are attached, and those images clearly show that the Bates numbers associated with the admissions data native Excel files were designated as confidential. This information, which is sensitive business information kept confidential by the University, should be used only for purposes of this suit, and in accordance with its confidentiality designation pursuant to the PO. We also don't agree that the admissions data has any relevance to your remaining claims.

## Self-Created Transcripts and Use of AI

This is the first time we have been made aware that the self-created transcripts you referenced were AI-generated. Previously, you represented that you were transcribing depositions on your own, citing your background in transcription. We continue to have serious concerns regarding the accuracy, reliability, and integrity of these transcripts— concerns that are only heightened by the use of unidentified AI tools. Indeed, we objected to your use of AI when you identified its use when your deposition was being taken, which is the only time you contemporaneously identified that you intended to use AI. If you would have informed us that you were using AI at other depositions, we would have likewise made a timely objection.

We do not believe it is feasible or appropriate for your notary to review the audio recordings from 13 depositions and check them against your self-created transcripts, which this Court has already noted do not comply with the federal rules. We maintain our right to object to the use of any transcripts or video recordings of depositions that do not comply with the governing rules.

## Use of Audio/Transcripts

Our position regarding transcripts remains consistent with what we've stated above.

Best,

Crinesha

**Crinesha B. Berry** Crowell &

Moring LLP cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>

**Sent:** Saturday, June 21, 2025 11:21 AM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda
<ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

I'm following up again on my June 17 email. As of this writing, I have not received a response. I understand these issues may take time to consider but would appreciate your feedback.

I'm open to proposals that might reduce the need for motions practice and welcome any updates on your positions.

MRN

On Tue, Jun 17, 2025, 4:11 PM <thayray@gmail.com> wrote:

The following text included in the P.O. will help, but it does not fully address all of my present concerns:

"Nothing in this Order shall be construed to restrict the use, dissemination, or publication of any material that a party obtained through independent means, even if the same material is designated as Confidential by the opposing party."

I would appreciate your feedback on that language. I anticipate filing a motion in mid July to clarify and modify the P.O. if necessary. As to the J.S., I expect to call attention to language expressing an intent to "safeguard the confidential information of students" and argue that interpretations that stretch the intent of the P.O. far beyond that—most particularly, to shield misconduct—should be rejected. I continue to object to Defendants' use of the privilege log clause to conceal communications that played roles in the events in question during my tenure at Howard.

Another concern I have is your designation as "confidential" documents that were so heavily redacted as to obviate any clear need for such a designation. Generally, I believe the "confidential" designation has been overused, including instances for which no clear basis for one exists. While the P.O. calls for such issues to be raised "promptly," and I acknowledge that some time has passed, I raise these objections in good faith.

I maintain that my videos of depositions should not be excluded from use in motions or at trial. If you have a proposal on how we might find common ground so as to avoid a need for motions practice on this issue, please let me know. I'd also like to clarify whether Defendants object to my public sharing of deposition videos, audio recordings, transcripts, and the like, and if so, on what grounds. With regard to admissions data, I am interested to know whether you object to its public disclosure, and if so, on what grounds. These spreadsheets do not appear to be designated as confidential.

Your last email seemed to signal an impasse on my use of "self-created" transcripts. (These were

AI-generated and then manually reviewed and edited for accuracy.) Without waiving any rights I may have regarding use of these, can I assume you would not object to their use if my notary public were to review the recordings in full, make corrections as needed, and verify the transcripts' accuracy? Additionally, do you have any objections to my use of audio recordings and corresponding transcripts that I made while a student at Howard?

MRN

On Mon, Jun 16, 2025 at 9:39 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

We have stated our objection to your reliance on your self-created transcripts in full detail in footnote 8 to our opposition to your motion for sanctions and on pages 2-3 (mostly on 3) of our opposition to your motion for leave to file audio depositions. As we've stated, our objection is grounded in Federal Rules of Civil Procedure 30(f) and 28(c).

We are not aware of any case or rule that would permit a party to rely on selfprepared transcripts—particularly when the transcripts include improper editorializing (e.g., exclamation points, characterizations, and emphasis)—at the summary judgment or trial stage. Nor are we aware of any doctrine requiring a showing of "actual prejudice or material deficiency" before enforcing the Rules' certification and authentication requirements. If you are aware of any such authority, please share it so we may consider it. But as it stands, we have no intention of waiving these requirements.

Separately, we want to clarify that we are not imposing any undue burden or costs onto you. While we recognize the financial challenges that come with proceeding pro se, the costs associated with depositions are a routine part of litigation regardless of a party's financial status or resources. You chose to take multiple depositions fully aware of the associated costs and our objection to your selfcreated transcript as early as July 2024 during Dean Olivares' deposition.

That said, if you intend to rely on your self-created transcripts, our objections will remain the same as what has been articulated previously. Otherwise, please identify the transcripts you'd like to have, and we can discuss cost-sharing.

We hope this clarifies our position. We do not have anything more to add on this point.

Best,

Crinesha

**Crinesha B. Berry** Crowell & Moring

LLP cberry@crowell.com

+1.202.688.3435 direct  |  +1.757.593.4107 mobile

**From:** thayray@gmail.com <thayray@gmail.com>
**Sent:** Wednesday, June 11, 2025 3:44 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
**Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
**Subject:** Re: Conferring on procedural matters and case-related materials.

Ms. Berry,

I would appreciate if we could also begin to address your objections to the transcription methods on which I have been relying. Could you please explain the basis for your objection in full, with appropriate detail? Have you identified any specific inaccuracies or deficiencies in any of the transcripts I have submitted to date?

I recognize that you previously stated a general objection to what you call my "self-created transcripts" in your March 18, 2025, Opposition to my sanctions motion, and I don't recall where else you objected, but on reviewing Rule 30(f), I don't see how it precludes a party from preparing and using his own transcripts for briefing purposes. I'm not attempting to advance any of my transcripts as a substitute for a certified court reporter's transcript, and you of course are always at liberty to call attention to inaccuracies in my transcripts, as I have done with yours on several occasions. In every instance where a transcript has been filed, have we not all possessed the underlying audio file?

As you know, I am an *in forma pauperis* litigant with limited financial means, and I believe it would be inappropriate for Defendants to impose burdensome financial demands such as requiring that I obtain copious certified copies absent any showing of actual prejudice or material deficiency. Could we determine together what remaining meaningful disputes require further attention from the Court?

Regards,
MRN

Virus-free.www.avast.com

On Tue, Jun 10, 2025 at 9:34 AM Berry, Crinesha <CBerry@crowell.com> wrote:

Mr. Newman:

As stated previously, we have appropriately withheld privileged communications with OGC. We do not intend to revisit privilege issues at this point. Discovery has closed, and the court recently declined your request for the disclosure of privileged materials in response to your motion for sanction.


Best,

Crinesha




**Crinesha B. Berry** Crowell & Moring LLP

cberry@crowell.com

+1.202.688.3435 direct | +1.757.593.4107 mobile




**From:** thayray@gmail.com <thayray@gmail.com>
        **Sent:** Saturday, June 7, 2025 12:59 PM
**To:** Berry, Crinesha <CBerry@crowell.com>
        **Cc:** Berns-Zieve, Eli <EBerns-Zieve@crowell.com>; Berman, Amanda <ABerman@crowell.com>
        **Subject:** Re: Conferring on procedural matters and case-related materials.



**Exercise caution with links and attachments**


You may not have corresponded with this sender before. Exercise caution when engaging with this email.



Ms. Berry,

I want to clarify one additional point regarding privilege designations that I may address further in my proposed edits. I continue to object to the blanket assertion of privilege over communications with the Office of General Counsel that were made during the period when the events underlying this litigation occurred. To the extent these communications involve administrative decision-making, internal inquiries, or the development of University responses rather than the rendering of legal advice or preparation for litigation I do not believe they fall within the scope of attorney-client privilege or work product protection.

I'm noting this now to ensure the issue is preserved and to allow for further discussion as necessary.

Regards,
MRN


On Sat, Jun 7, 2025 at 10:20 AM <thayray@gmail.com> wrote:

Dear Ms. Berry,


Thank you for providing this copy of the Protective Order. I assume it is identical to the version I already have on hand.

One concern I want to raise is the apparent expansion of the Order beyond what I understood at the time it was proposed, and beyond what you represented in early 2024. In our March 20, 2024, Joint Statement you identified your intent "to safeguard the confidential information of students and to set forth privilege protocols." That was the stated rationale on which you introduced and justified the need for a PO. The "good cause" standard under Rule 26(c) permits protective orders where necessary to prevent annoyance, embarrassment, or undue burden, but it does not authorize general restraints on speech or reputation management. The PO must be tied to a legitimate, articulable need such as privacy or privilege, not a desire to control narrative or suppress criticism. To the extent the PO has been interpreted or applied in ways that go beyond those stated grounds, for example, in connection with materials not obtained through discovery, not marked confidential, or created by me independently—including deposition recordings I lawfully made—such applications stretch the Order beyond its original justification and beyond what Rule 26(c) permits. As I've articulated in the past, an important aim of this legal action is to seek accountability for Defendants' wrongdoing.

I want to be clear that this remains one of my objections to how the PO has been applied. I intend to follow up with any further objections and will also be happy to propose clarifying language as you suggested. It may also be appropriate to raise your objections to my continued use of self-created transcripts in briefing and motions practice, as noted during the May 27 hearing.

MRN